W. L. FERRELL, et al. v. J. J. HALES.

*Practic·—Entry of Verdict by Clerk—Entry of Judg-
ment—Judgment Nunc pro Tunc.*

1. A clerk of the court may by consent receive a verdict, even if the judge is not in the court room, provided it is done before the expiration of the term ; and he may thereupon enter a valid judgment under *Code*, Section 412 (1), or make a memorandum thereof and afterwards write it out in full.

2. But where the clerk, having by consent received a verdict at 11.40 o'clock Saturday night of the last week of the term, failed, in the absence of the judge and for lack of other direction by him, to enter judgment or memorandum thereof in accordance with the verdict that night, but entered judgment on the following Monday morning, and after the expiration of the term ; *Held*, that the judgment so attempted to be entered was a nullity.

3. In such case, the judgment being a nullity, an appeal therefrom could not operate as a vehicle to remove the record so as to subtract it from the operation of legal orders of the trial judge at the next term.

4. Where a verdict was, by consent of the parties, but in the absence of the judge from the court room, received by the clerk on the last day of court, but no judgment was entered, it was proper for the judge at the next term, finding the record complete up to and including the verdict, to render judgment *nunc pro tunc*, and it was not necessary to the validity of the judgment that notice of its entry should be given, since the cause was pending on the docket.

5. A judgment rendered *nunc pro tunc*, at a term of court succeeding that at which the record was complete up to and including verdict, is as operative, as between the parties, as if it had been rendered at the previous term, but, as to other parties, it is effective, as a lien, only from the first day of the term at which it was actually entered.

6. Where the defects in tobacco, sold with representations as to its grade and quality, are latent and peculiarly within the knowledge of the seller, the fact that the buyer has an opportunity to inspect it, and does not do so fully, is no waiver of the warranty.

FERRELL v. HALES.

CIVIL ACTION, tried at January Term, 1896, of DURHAM Superior Court, being for damages for breach of warranty in the sale of a lot of tobacco by the defendant to the plaintiffs.   The issues submitted and the responses were as follows:

"1. Did the defendant warrant that his crop of tobacco sold to the plaintiffs contained 22 bulks of fine wrappers? Ans., 'No.'

"2. Was there a breach of said warranty?   Ans., 'No.'

"3. Did the defendant represent to the plaintiffs that his crop of tobacco contained 22 bulks of bright wrappers? Ans., 'Yes.'

"4. Was such representation false?   Ans., 'Yes.'

"5. Was such representation well known to be false to the defendant?   Ans., 'Yes.'

"6. Did defendant have good reasons to believe such representations to be true?   Ans., 'No.'

"7. Were plaintiffs induced to purchase by reason of such false representation?   Ans., 'Yes.'

"8. What damage, if any, have plaintiffs sustained? Ans., 'Nineteen hundred dollars.'"

The contentions of the parties and exceptions taken on the trial can be gathered from the charge of his Honor and the special prayers for instructions by the defendant. His Honor's charge was as follows:

" This is an action, gentlemen of the jury, in which the plaintiffs seek to recover damages from the defendant.   And the plaintiffs have alleged in their complaint two causes of action, known in law as ' false warranty ' and ' deceit '—the one contract and the other *tort*—alleged to have grown out of the same transaction.

" The plaintiffs have introduced parol testimony, by which they contend that they have shown a warranty as

to the quality of the tobacco in question made by the defendant, not embraced in the paper-writing dated August 22, 1894, which paper-writing is admitted by the plaintiffs to be signed by them, and admitted by the plaintiffs to have been accepted by the defendant, and which was introduced in evidence in this case.

" The court, being of the opinion that this paper is a written contract between the parties, instructs the jury that a prior contemporaneous warranty cannot be added to it by parol testimony.

" And there being no evidence competent for the jury to consider of any warranty touching the quality of the tobacco, they will answer the first issue ' No ' and the second ' No.'

" But while the plaintiffs may not add to the written contract a prior or contemporaneous warranty by parol testimony, they may nevertheless show, if they can, that they were induced to make the contract by the fraudulent representations of the defendant ; and, if they have shown this, recover such damage as the jury may find from the evidence that they have suffered by reason of such contract.

" The plaintiffs contend that they have shown, by the greater weight of evidence, that they were induced to make the contract by the fraudulent representations of the defendant.

" The defendant, on the other hand, contends that he made no such representations ; and in order that the controversy between the parties may be determined, the court has submitted to you certain issues, which you will answer from the evidence, under the instruction of the court.

" The first issue submitted to you to consider under this head is marked No. 3 on the paper, and is :

FERRELL *v.* HALES.

" Did the defendant represent to the plaintiffs that his crop of tobacco consisted of 22 bulks of bright wrappers ?

" The plaintiffs contend that the defendant did represent to them that his crop of tobacco contained 22 bulks of bright wrappers ; that he said that these 22 bulks were the body of the plant ; that it was prime tobacco ; that it was all wrappers ; that he said that they were fine wrappers, and showed them samples of them ; that they were standing out in the floor when they were examining the tobacco ; that when they showed them samples witness asked defendant if the bulk would come up to the samples, and he said it would.    That it was uniform ; that there were two, three or four sticks pulled out of each bulk, and that the sticks pulled out of each bulk were wrappers ; and that they asked the defendant if the bulk was through like that, and he said it was ; that all the samples shown to the plaintiff witness were wrappers—very fine wrappers.

"The defendant, on the other hand, contends that he never represented to the plaintiffs that his crop of tobacco contained 22 bulks of bright wrappers ; that he met up with Carter and Ferrell at one of his barns ; that Carter introduced Ferrell and said, ' We have come out here to buy your tobacco ; Mr. Ferrell has $25,000 to invest ' ; said they had bought out Watson, and had come to buy out the defendant ; and that they meant business, and they asked defendant what he would take for his entire crop ; that he, the defendant, said that he couldn't sell until he could make suitable arrangements with his tenants ; that he went to the tenants and told them frankly his business ; bought out his tenants ; went back and told Carter and Ferrell that he had made arrangements with his tenants at home, but there was one at the other place ; that Ferrell and Carter went with witness over to see that tenant, and

that he told the tenant his business; that then the tenant and the witness and Ferrell and Carter went and looked at the tobacco, and Ferrell and Carter went in and examined it; came out; that then they went to the other place and examined that; that Carter would pull out the sticks, and wherever he selected the defendant would hold up opposite corner and he would pull it out; pulled out from about half the bulks—he pulled out from about half-way up—he would take sample and he and Ferrell would examine it; that his instructions to Joyner was to put as much in the bulks as possible; to put each barn to itself as near as he could; that nothing whatever was said by him, the defendant, about any of the bulks being wrappers; that he knew that not one of the bulks were wrappers; that it could not have been, for it had not been graded; that Ferrell asked him if the bulks would run through with the samples pulled out, and that he said that some of them would, and some of them would not; that he put the tobacco in to be secured and cared for until he could get his crop in and grade it, and carry it to the warehouse and sell it, and the defendant contends that the jury should answer the 3d issue ' No.'

" The plaintiffs, on the other hand, contend that the jury should answer the 3d issue ' Yes.' And the court instructs the jury that if the plaintiffs have shown by a preponderance—that is, by a greater weight of the evidence—that the defendant did represent to the plaintiffs that his crop of tobacco did contain 22 bulks of bright wrappers, then they should answer the 3d issue ' Yes.' But if the plaintiffs have failed so to show, or if the jury believe, from all the evidence in the case, that the defendant did not represent to the plaintiffs that his crop of tobacco contained 22 bulks of bright wrappers,

then they will answer the 3d issue ' No '; and if they answer the 3d issue ' No' they need go no further, for this would end the whole case.

"If the jury answer the 3d issue ' Yes,' and believe the evidence of the defendant, they will answer the 4th issue ' Yes.'

"If the jury answer the 3d issue ' Yes,' and believe the evidence of the defendant, they will answer the 5th issue ' Yes' and the 6th issue ' No.'

"The next issue submitted to the jury is the 7th : ' Were the plaintiffs induced to purchase by reason of such false representation ? '

"The plaintiffs contend that they were induced to purchase by reason of the false representation of the defendant; that the defendant represented to them that 22 bulks all contained bright wrappers; that they examined certain samples which were bright wrappers, as they contend, and that the defendant represented to them that all the bulks contained the same grade of tobacco as the samples; that the bulks were uniform, and they contend that such representation constituted a material inducement to the contract; that they relied upon the same; that they were ignorant of its falsity and believed it to be true; that it was made with intent that it should be acted upon ; and that it was acted upon by them to their damage.

"The defendant contends that no such representation was made, and he further contends that if the jury should find that it was made, that still the plaintiffs did not rely upon it, but that they relied upon their own examination of the tobacco; that they were not induced to purchase by any representation made by him as to the quality of the tobacco ; that they made numerous selections of samples from the various bulks, and relied in making the purchase upon such examination made by themselves.

" The court instructs the jury further that if they will consider all the evidence in the case bearing upon the 7th issue, and if the plaintiffs have shown by the greater weight thereof that they were induced to make the purchase by reason of the false representation of the defendant, if he made any false representation, they will answer the 7th issue ' Yes.' But if the plaintiffs have failed to so show this, or if the jury believe from the evidence that the plaintiffs did not rely upon any false representation of the defendant, if he made any, but relied upon their own judgment and examinations, then they will answer the 7th issue ' No.'

" The jury are instructed that to entitle the plaintiffs to recover in this case the jury must believe from the evidence that the defendant made the representations alleged in the complaint ; that such representations were false ; that the defendant knew that it was false, or had no apparently good reason to believe it to be true ; that it was made with the intent to defraud the plaintiffs ; that it was calculated to deceive, intended to deceive, and that the plaintiffs were induced thereby to make the trade in question, and that they have sustained damage by reason thereof.

" If the jury shall answer the foregoing issues in favor of the defendant, they need not consider the 8th issue as to the damage, but if they have answered the said issue in behalf of the plaintiffs, then they will proceed to consider what damage, if any, the plaintiffs have sustained.

" The plaintiffs contend that they have shown their damage to have been $2,800. The jury will determine from the evidence what damage, if any, the plaintiffs have sustained, and give this amount as their answer to the 8th issue ; and the measure of damages in this case (if any damage was sustained) is the difference between the actual

value of such tobacco as it was and the price it would have brought sold upon the market, had it been what it was represented to be, if any such representation was made."

The defendant's prayers for special instructions were as follows:

" 1. That, upon the first cause of action sued upon, in no view of the evidence can the plaintiffs recover, and that they will answer the first and second issues ' No.'

" 2. That upon the whole testimony plaintiffs are not entitled to recover, and the jury will answer the third, fourth and fifth issues ' No.'

" 3. That in order to constitute actionable deceit the representations must have been such as a reasonably prudent man would have relied upon.

" 4. That in order to constitute actionable deceit the representations must have been actually relied upon by the plaintiffs and formed a material inducement to the contract.

" 5. That if the plaintiffs were informed that the tobacco was bulked as it came from the curing barns of defendant, then such information put them upon inquiry, and they had no right to rely upon the representations of defendant, if such were made, that 22 bulks of the tobacco were fine wrappers.

" 6. That in view of the express stipulation in the paper-writing of August 30, 1894, signed by the defendant, ' that no other claim shall accrue upon us in any way,' the plaintiffs had no right to rely upon any representations of the quality of the tobacco, and you will answer the seventh issue ' No.'

" 7. Even if the jury believe that the representations were made at the barn, still if the jury believe that at the time of the sale and before payment of the money the

defendant said he would make no representations, but that plaintiffs must take the tobacco as they saw it, then the jury will answer the third issue 'No.'

"8. That if the tobacco was susceptible of examination as to quality, and the plaintiffs had an opportunity of making examination and did not make it, then the seventh issue will be answered 'No,' notwithstanding the representations alleged to have been made.

"9. That if the plaintiffs had ample opportunity to examine the tobacco, and by such examination they would have discovered that the bulks were not all fine wrappers, the jury will answer the seventh issue 'No,' unless the jury find from the evidence that the defendant made the alleged representation expressly, and that it was false and made in such a way that it had a natural tendency to prevent the plaintiffs, as men of prudence, from making a full examination.

"10. That if the plaintiffs bought on their own judgment, after examination and without reference or reliance upon the alleged representations of defendant, then the jury will answer the seventh issue 'No.'

"11. That if the jury believe that Carter, one of the plaintiffs, bought the tobacco upon his own judgment, although representations may have been made by Hales which were believed and acted upon by Ferrell, yet the plaintiffs cannot recover, and you will answer the third and seventh issues 'No.'

"12. The plaintiffs, being partners in the purchase of the said tobacco, whatever knowledge the plaintiff Carter had, either before or at the time of the purchase, in respect to the quality or the manner of bulking the tobacco, is to be imputed to his co-plaintiff, Ferrell.

FERRELL *v.* HALES.

"13. That if, upon consideration of the whole case, the testimony is evenly balanced in the minds of the jury, the plaintiffs cannot recover.

"14. The court charges you that, upon the testimony of the co-plaintiff Carter, the plaintiffs cannot recover, and you will answer the _____ issue 'No.'

"15. If this is not given, we ask the court to charge that if the jury believe the testimony of Carter, taken before the clerk, the plaintiffs cannot recover, and they will answer the issue _____ 'No.'"

His Honor gave the prayers, numbered 1, 3, 4, 10, 12 and 13. Declined to give 2, 5, 6, 7, 8, 11, 14, 15; and modified 9 by adding these words: "Unless the jury find from the evidence that the defendant made the alleged misrepresentation expressly, and that it was false and made in such a way that it had a natural tendency to prevent the plaintiffs, as men of prudence, from making a full examination."

To the modification of instuction 9 the defendant excepted, and assigns error therefor.

Defendant excepted to the refusal of his Honor to give the instructions prayed by defendant, and assigns each such refusal as error.

Among other instructions given by his Honor to the jury, he instructed them as follows: "The court instructs the jury further that they will consider all the evidence in the case bearing upon the 7th issue, and if the plaintiffs have shown, by the greater weight thereof, that they were induced to make the purchase by reason of the false representations of the defendant (if he made any false representations), they will answer the 7th issue 'Yes,' But if the plaintiffs have failed to show this, or if the jury believe

from the evidence that the plaintiffs did not rely upon false representations of the defendant (if he made any), but relied upon their own judgment and examination, then they will answer the 7th issue ' No.' ' "

" *Exception :* The defendant excepted to this instruction as erroneous, and assigned error therein.

" His Honor charged the jury on the 8th issue : ' And the measure of damages in this case (if any damage were sustained), is the difference between the actual value of the tobacco as it was, and the price it would have brought if sold upon the market, had it been what it was represented to be, if any such representations were made."

The defendant excepted to this instruction as erroneous, and assigned it as error.

At the close of his Honor's charge at 6 : 30 p. m. Saturday, (the last day of the term,) it was agreed by counsel for both parties that the clerk might take the verdict of the jury. His Honor thereupon adjourned court until 8 p. m., when he returned to the bench and transacted business until 10 : 30 p. m., when he left the bench and announced that the term would not be formally adjourned, but he would let it expire by limitation of law at 12 o'clock p. m. His Honor did not return to the bench again that night, or make any other announcement, nor continue the term.

At 11 : 40 p. m., the jury announced their verdict, which was taken by the clerk, there being no other order by the judge to the contrary. The judge not having left town did not himself in person make any judgment. The clerk made no entry or memorandum of judgment on Saturday night, but entries of the verdict and judgment were made early on Monday morning, and on the same morning defendant's counsel entered a protest to the entry of judgment by the clerk, and in due time entered an appeal.

119—14

FERRELL v. HALES.

At March Term, 1896, of the court, his Honor, *Judge Coble*, on motion of plaintiffs, caused the following judgment to be entered :

" In this cause, it appearing unto the court that at January Term, 1896, of DURHAM Superior Court, the jury having returned a verdict for the plaintiffs and assessing the damages at $1,900 ; and it further appearing to the court that no judgment was presented to the judge because of the late hour when the verdict was returned, said verdict being returned at 11 : 40 o'clock on Saturday night of the last week of said term, and by consent the clerk received the verdict in the absence of his Honor, *A. L. Coble, Judge*, and counsel on both sides ; it is now, on motion of counsel for plaintiffs, ordered and adjudged that the plaintiffs recover of the defendant the sum of nineteen hundred dollars, with interest at 6 per cent. per annum from January 13, 1896, and the cost of this action to be taxed by the clerk ; and this judgment is signed and will take effect as of the January Term, 1896, of DURHAM Superior Court, but this judgment is not intended to be and is not cumulative with the judgment entered in this case or attempted to be entered by W. J. Christian, clerk, under Section_____ of *The Code*. The said clerk will make a minute of this judgment upon the said former judgment or attempted judgment of said clerk.

ALBERT L. COBLE,"<br>
<em>Judge Presiding.</em>"

To this judgment the defendant excepted and appealed to the Supreme Court for the reasons as follows :

" 1. No notice of the motion was given.

" 2. That the action was not put either on the trial docket or motion docket arranged by the members of the bar, with the consent of the court, on March 10, 1896, for the March Term, 1896, of the court.

" 3. That this action was not pending in the superior court of Durham county, but was pending on appeal in the Supreme Court of this State, from what purported to be a judgment of the superior court of Durham county, at January Term of 1896."

In support of these grounds it was admitted no notice, verbal or written, had been given of the motion for judgment; and it was admitted the case did not appear either upon the trial or motion docket of the printed calendar arranged by consent for the March Term, 1896, and that no request was made that the case be put upon either printed docket, but was on clerk's docket.

*Messrs. Winston & Fuller* and *Boone & Bryant*, for plaintiff.

*Messrs. Manning & Foushee, H. G. Connor* and *Shepherd & Busbee*, for defendant (appellant).

CLARK, J.: There are two appeals in this case, one from the judgment entered by the clerk upon the verdict, and the other from the judgment rendered by the judge at the next term, *nunc pro tunc*, but for convenience both can be disposed of together.

The verdict was rendered at 11:40 p. m. Saturday of the second week.   This case differs from *Delafield* v. *Construction Co.*, 115 N. C., 21, in that the judge had not left the court, and though he was not in the court room in person when the verdict was rendered, it was received by the clerk, by consent of parties, and was therefore a valid judgment in all respects.   The term was not extended by the judge as authorized by Chapter 226, Acts 1893, but the verdict was within the limits of the term if the judge were present, and he was present through the clerk, who could, by consent of parties, represent him for the purpose of

FERRELL *v.* HALES.

receiving the verdict. *State* v. *Austin*, 108 N. C., 780. If the clerk thereupon had entered up the judgment, it would unquestionably have been valid, for *The Code*, Sec. 412 (1) provides that, upon receiving the verdict, "if a different direction be not given by the court, the clerk must enter judgment in conformity with the verdict." Even if the clerk had merely entered a memorandum, as "judgt.," it would have been sufficient, according to the authorities, and the judgment in full could have been drawn out thereafter. *Davis* v. *Shaver*, 61 N. C., 18; *Jacobs* v. *Burgwyn*, 63 N. C., 193. But neither judgment nor memorandum of judgment was entered, there being no action whatever taken beyond receiving the verdict. It was, therefore, clearly incompetent for the clerk to attempt to enter judgment on the Monday following. It must be declared a nullity, and in the appeal from the same the appellee will pay the costs in this Court.

At the next term the record presented the case of a valid verdict, but with no judgment entered thereon. The judge could not set aside the verdict rendered at the previous term; and if he could not enter judgment upon the facts found by the jury by their recorded verdict, the matter would have been forever suspended, like Mahomet's coffin.

> " In Aladdin's tower
> "Some unfinished window unfinished must remain."

Not so in legal proceedings which deal with matters of fact, not fancy. The judge at the next term, seeing the record complete up to and including the verdict, properly rendered judgment *nunc pro tunc*. This was practical common sense, and is justified by precedent. *Bright* v. *Sugg*, 15 N. C., 492; *Long* v. *Long*, 85 N. C., 415; *Smith* v. *State*, 1 Tex. App., 408. As to difficulties suggested, it may be observed that, while the judgment as between the parties is entered as of the former term, *nunc pro tunc*, as

to third parties it can only be a lien from the docketing, which by *The Code*, Sec. 433, has effect from the first day of the term at which it was actually entered. In the present case the judge at the second term who rendered the judgment was the same who had presided at the trial term ; but had there been different judges at the two terms it is the latter who in case of disagreement should settle the case. The matters excepted to, up to and including the verdict, should be settled by the first judge, and his statement sent up in the case made by the last judge, as is the case with exceptions as to matters not immediately appealable for lack of final judgment ; as in *Jones* v. *Call*, 89 N. C., 188 ; S. C., 96 N. C., 337 ; *Blackwell* v. *McCaine*, 105 N. C., 460. It is also excepted to this last judgment that the case was in the Supreme Court by appeal from the alleged judgment by the clerk ; but, as we have seen, that attempted judgment was a nullity, and of no more effect than would have been the same entry on the record by a stranger. The judge properly treated it as a nullity, and the appeal from such unauthorized entry on the record could not have the effect to take the case into this Court so as to subtract it from legal orders of the judge presiding in the court below. No notice of motion was necessary at term time in a cause pending on the docket. *Coor* v. *Smith*, 107 N. C., 430 ; *Sparrow* v. *Davidson*, 77 N. C., 35 ; *University* v. *Lassiter*, 83 N. C., 38, and other cases cited in Clark's Code (2d Ed.), p. 652.

A careful examination of the exceptions to instructions given, and for refusal to give instructions prayed, shows no error. Without taking them up in detail, the court below is sustained by the principles laid down in *Lewis* v. *Rountree*, 78 N. C., 323 ; *Love* v. *Miller*, 104 N. C., 582 ; *Blacknall* v. *Rowland*, 108 N. C., 554 ; S. C., 116 N. C.,

389.   The tobacco was sold by sample and examination of outside bulks, and upon representations made by the defendant.   The defects were latent and as to matters peculiarly within the knowledge of the defendant.

No Error.