STATE OF NORTH CAROLINA Ex Rel. UTILITIES COMMISSION AND THE ALEXANDER RAILROAD COMPANY ET AL. v. STATE OF NORTH CAROLINA; THE DEPARTMENT OF AGRICULTURE OF THE STATE OF NORTH CAROLINA; THE NORTH CAROLINA STATE GRANGE; THE FARMERS COOPERATIVE COUNCIL; THE FARMERS COOPERATIVE EXCHANGE; AND THE NORTH CAROLINA FARM BUREAU FEDERATION.

(Filed 2 November, 1955.)

**1. Judgments § 19—**

An order signed out of the county and out of the district without notice to the adversary parties and without their consent is void.

**2. Same: Appeal and Error § 14—**

Notice of appeal from a void order does not take the cause out of the Superior Court, and the judge has power thereafter to enter a subsequent order in the cause.

**3. Constitutional Law § 8a—**

The establishment of State policy is the prerogative of the General Assembly.

**4. Same: Utilities Commission § 1—**

The standard provided by the General Assembly for the fixing of rates for public utilities operating in this State, and whether such standard is outmoded, lie within the exclusive province of the General Assembly, the Utilities Commission not being a policy-making agency.

**5. Utilities Commission § 1—**

The General Assembly has provided the standard to be followed by the Utilities Commission in fixing charges to be made by public utilities operating in this State, and such standard is binding upon the Commission and the courts.

**6. Utilities Commission § 3—**

An order of the Utilities Commission granting a petition of railroad companies for increase in intrastate freight rates, entered without any evidence of the fair value of the respective properties of the companies used and useful in conducting their intrastate business separate and apart from their interstate business, is unsupported by evidence of the type required by G.S. 62-124, and judgment of the Superior Court reversing such order is without error.

**7. Same—**

In determining a petition for increase in intrastate freight rates, the Utilities Commission must follow the standard prescribed by statute, and whether the Interstate Commerce Commission may thereafter order an increase in intrastate rates if the Utilities Commission should deny the petition, is irrelevant.

APPEAL by petitioners from *Harris, J.,* October Term, 1953, WAKE.

Proceeding before the North Carolina Utilities Commission upon petition of the railroads operating in the State of North Carolina to make increases in the intrastate freight rates and charges in the State. On 3 January 1952, the Utilities Commission granted the petitioners a six per cent increase in their freight rate schedules for intrastate shipments. This six per cent increase is not at issue. A petition was filed by the various railroads of the country with the Interstate Commerce Commission, hereinafter referred to as I. C. C., for general increase in the freight rate charges for interstate shipments. A hearing was had at which the Utilities Commission and like agencies in other States had representatives present who "participated" in the hearing. The I. C. C., in proceedings known as *Ex Parte* 175, allowed a fifteen per cent increase, with few exceptions, on interstate shipments of freight.

On 2 June 1952, the North Carolina carriers filed their petition herein, seeking authority to increase their intrastate rates an additional nine per cent so that they would conform with the increase allowed for interstate shipments. The petition was allowed, such increase to expire 28 February 1953. Later the expiration date was extended to 28 February 1954.

The Attorney-General of the State of North Carolina and others, protesting the increases, appealed to Wake Superior Court.

The case came on for hearing on 10 October 1953 at the October Civil Term before Harris, Judge of the then Seventh Judicial District. At the conclusion of the oral argument, counsel for the appellants tendered to the court a judgment and moved that it be signed and entered as the judgment of the court. At the conclusion of the hearing, the court announced that it would take the matter under consideration, no objection being entered thereto. On the following day, 20 October 1953, counsel for the railroads, pursuant to an informal agreement with counsel for appellants, tendered to the court a judgment, this being treated and regarded by all parties as a motion for the signing and entering of such judgment.

Thereafter, on 4 February 1954, Harris, J., signed and entered the judgment so tendered to him by the appellants at the hearing on 19 October 1953, the same being signed out of term and out of the Seventh Judicial District, the judge being then a patient in Memorial Hospital at Chapel Hill, North Carolina.

On 10 February 1954, counsel for the railroads, after notice to appellants, appeared before Harris, J., who was still a patient in Memorial Hospital, and entered their motion for an order permitting the railroads to continue to charge the rates as authorized by the said order of the Utilities Commission until 28 February 1954. The motion was allowed and an order permitting the railroads to continue to collect the said

freight charges until 28 February 1954 was entered upon conditions set forth in the said order.

On 12 February 1954, the railroads gave due notice of their appeal to the Supreme Court of North Carolina from the judgment of 4 February 1954.

On 3 March 1954, Harris, J., having returned to Wake County from Chapel Hill, re-signed the identical judgment previously signed by him on 4 February 1954 while he was in the hospital. On 12 March 1954, the said railroads gave due notice of their appeal to the Supreme Court of North Carolina from the re-signing of the said judgment.

The order of the Utilities Commission dated 9 July 1953, which was reversed on appeal by the court below, was based, in part, on these findings: (1) "That the revenue needs of the railroads operating in North Carolina since the decision in the Divisions Case . . . are substantially the same as that of railroads operating in other sections of the United States;" (2) "That the disparity between intrastate rates within the State of North Carolina and the interstate rates in effect to and from points in this State, constitute an unlawful discrimination, and is inconsistent with the policy of this State in its long and successful effort in CLASS RATE INVESTIGATION, DOCKET No. 28300, for a uniform level of class rates;" and (3) "That, subject to exceptions . . . the additional increase in intrastate rates herein requested amounting to approximately 9% is fair, just and reasonable."

In addition, the order of the Utilities Commission which is the subject of this appeal is based upon the following interpretation of the opinion and order of the I. C. C. in the proceeding before it known as *Ex Parte* 175:

"In other words, under the findings of the Interstate Commerce Commission in a cooperative proceeding in which state commissions, including this Commission, participated, it is necessary that all basic freight rates and charges, interstate and intrastate, be increased 15% to produce the revenue needs of the railroads."

The court below concluded as a matter of law that the above-quoted findings were not supported by any substantial evidence and were arbitrary and capricious. It also found that the above-quoted interpretation of the opinion and order of the Interstate Commerce Commission was erroneous as that order did not undertake to fix or regulate intrastate rates.

The court below also concluded that the order appealed from was erroneous and in excess of the authority conferred upon the Utilities Commission in that there was no evidence to show, and the Commission did not find, the value for rate making purposes of the property of the petitioning railroads used and useful in the performance by them of the

service of transporting freight in intrastate commerce. Also, the court concluded that there was no evidence tending to show the rate of return earned by the petitioning railroads upon such properties from the transportation of freight in intrastate commerce, as a basis for increasing said rates.

The court below likewise concluded that the order of the Commission was erroneous and in excess of its authority in that there was no evidence to show that the rates in effect prior to the order were insufficient to permit the petitioning railroads to earn a fair return upon the value, for rate making purposes, of their properties used and useful in the transportation of freight in intrastate commerce, or that any increase was necessary in order to enable the railroads to earn in the reasonable future a fair return upon such value of their properties, or to show that the rates fixed by the order appealed from were just and reasonable.

The order of the Commission also contained a finding that the intrastate rates in North Carolina were depressed and were creating a discrimination which could not successfully be defended. A fear was expressed that "In attempting to maintain this position we will certainly run afoul of the provisions of U. S. Code, Title 49, Sec. 13 (4) which could take from this Commission its jurisdiction over intrastate freight rates in this State."

A petition of the Commission to the I. C. C. growing out of another proceeding was relied on in this proceeding. It is, in part, as follows:

"That the North Carolina Corporation Commission desires to cooperate to the fullest extent with the Interstate Commerce Commission.

It realizes from the order made in the instant case that the state and interstate rates in issue must be on a parity. The object of both commissions should be to see that this result is accomplished without manifest unfairness. With the express understanding, and upon the express condition that the North Carolina Corporation Commission will cooperate fully with the Interstate Commerce Commission by permitting the carriers to establish their intrastate class rates on the interstate level, and with the further understanding that the North Carolina Corporation Commission has no intention or desire to maintain commodity rates on any articles within the scope of the complaint on a basis lower than the rates actually governing the movement of interstate traffic of the same nature from Virginia to North Carolina, it is requested that the Commission suspend the operation of its order dated February 11, 1930, in order to permit the North Carolina Corporation Commission to bring about the establishment of rates in harmony with the findings of the Interstate Commerce Commission."

Counsel for the petitioners stipulated that no railroad "has or can supply for the record the investment which is attributable to intrastate

freight or intrastate freight and passenger service in North Carolina. It cannot attribute to the intrastate freight or the intrastate freight and passenger service combined, the proportion of operating expenses."

The court below concluded that the order of the Commission dated 9 July 1953 was arbitrary, capricious, in excess of the statutory authority of the Commission, and was unsupported by competent, material and substantial evidence.

The order of the Utilities Commission of 9 July 1953 was reversed by the lower court in each judgment signed by Harris, J. The petitioners excepted and appealed.

*Attorney-General McMullan, Assistant Attorneys-General Lake, and Paylor for the State of North Carolina and the Department of Agriculture of the State of North Carolina, appellees.*

*W. T. Joyner, H. E. Powers, A. J. Dixon, and H. J. Karasin for petitioner appellants.*

*Broughton & Broughton for North Carolina Farm Bureau Federation, North Carolina State Grange, Farmers Cooperative Council, and Farmers Cooperative Exchange, appellees.*

BARNHILL, C. J. The order entered herein by Harris, J., on 4 February 1954, at Chapel Hill, N. C., was signed out of the County of Wake and out of the District without notice to the adversary parties and without consent that the cause might be thus heard. The order is void. *Patterson v. Patterson,* 230 N.C. 481, 53 S.E. 2d 658; *Shepard v. Leonard,* 223 N.C. 110, 25 S.E. 2d 445, and cases cited; *Jeffreys v. Jeffreys,* 213 N.C. 531, 197 S.E. 8; *Collins v. Wooten,* 212 N.C. 359, 193 S.E. 385; *Cahoon v. Brinkley,* 176 N.C. 5, 96 S.E. 650; *McNeill v. Hodges,* 99 N.C. 248; *Godwin v. Monds,* 101 N.C. 354. The notice of appeal therefrom did not serve to take the case out of the Superior Court or to deprive the proper Superior Court Judge of jurisdiction in Wake County. *Ferrell v. Hales,* 119 N.C. 199; *S. v. Miller,* 225 N.C. 213, 34 S.E. 2d 143. Hence the cause pending before us on this appeal is the order signed by Harris, J., in Wake County on 3 March 1954 from which the petitioners appealed.

The Utilities Commission is not a policy-making agency of the State. That prerogative rests in the General Assembly. While its long line of decisions cited in the opinion written by Hunter, Commissioner, may establish a uniform policy of the Commission, it does not and cannot be regarded as State policy.

The Commission expressed the fear that it would lose its jurisdiction over intrastate rates unless it made the intrastate schedule of freight charges conform to the schedule adopted by the I. C. C. for interstate

commerce and states in its opinion that it had assured the I. C. C. that if it was permitted to retain jurisdiction over the intrastate freight rates to be charged by railroads operating in North Carolina, then it, the Commission, would establish rates on a parity with the rates already approved by the I. C. C. for interstate shipments. In view of these facts, we are unable to perceive how the Commission could hear the evidence of the protestants and weigh and consider the same with the cold neutrality of impartial judges.

Be that as it may, this case comes within a very narrow compass. The Legislature, in adopting G.S. 62-124, has provided the standard to be followed by the Utilities Commission in fixing charges to be made by public utilities operating in this State. *Utilities Com. v. State* and *Utilities Com. v. Telegraph Co.*, 239 N.C. 333, 80 S.E. 2d 133. It may be that this standard is outmoded, and some other more feasible procedure should be provided. That is a question for the General Assembly to determine. So long as the law remains as it is now written, it is binding both upon the Commission and upon this Court. It is frankly stipulated that the petitioners had no testimony tending to show, and they were unable to prove, the fair value of their respective properties used and useful in conducting their intrastate business, separate and apart from their interstate business. This being true, the order entered by the Commission is unsupported by evidence of the type required by this statute. It follows that the court below committed no error in entering its order dated 3 March 1954.

In *Ex Parte* 175 the I. C. C. granted a fifteen per cent increase in interstate rates only. It is apparent that it anticipated that the rate-making agencies in the several States would grant a like increase for intrastate shipments of freight. The Mississippi Public Service Commission declined to fix rates on a parity with the increased interstate rates. Thereupon the railroads petitioned the I. C. C. for the requested increase. The petition was allowed. The Mississippi Commission sought to restrain the enforcement of the increase in intrastate rates, and a three Judge District Court held that there was no substantial evidence in the record to support the order of the I. C. C. and reversed. *Mississippi Public Service Commission v. United States*, 124 F. Supp. 809. On appeal the judgment entered was affirmed by *per curiam* opinion, 349 U.S. 908.

In Louisiana the same procedure was had except that the three Judge District Court affirmed the order of the I. C. C. *Louisiana Public Service Commission v. United States of America and the Interstate Commerce Commission*, 125 F. Supp. 180. This judgment was affirmed on appeal in a *per curiam* opinion, 348 U.S. 921.

After Harris, J., signed his judgment reversing the order of the Commission, the Commission vacated its order. Thereupon the railroads petitioned the I. C. C. to increase intrastate rates so as to place them on a parity with rates fixed for interstate shipments. The petition was allowed. The State of North Carolina and certain farm agencies instituted an action in the District Court to enjoin the enforcement of said order. A three Judge District Court composed of *Parker, Circuit Judge,* and *Gilliam* and *Warlick, District Judges,* denied injunctive relief and dismissed the action. 128 F. Supp. 718. This judgment was affirmed by the Supreme Court on 10 October 1955, by *per curiam* opinion.

The three above-cited cases have no bearing on the question here presented. They are simply cited to disclose developments since the judgment appealed from was entered. In comparing those cases with the case instituted before our Commission, we must bear in mind that the I. C. C., in granting the increase in intrastate rates, was acting under 49 U.S.C., sec. 13 (4) which makes discrimination the criterion; whereas our Commission is confined to the standard prescribed by the State statute.

In neither the Mississippi nor the Louisiana case was the jurisdiction of the I. C. C. to intervene and fix intrastate freight rates specifically discussed or decided. The clear implication is that the United States Supreme Court sustains that authority. If this be true—as apparently it is—it is merely one more incident in the ever-increasing centralization of authority in the Federal government. Even so, when resort is had to the Utilities Commission for an increase of intrastate rates, the Commission must follow our statute, let the final result as to jurisdiction be what it may.

In fact, the question here posed would now be moot except for the fact that during the period the Commission order was in force the railroads collected approximately one million dollars in freightage.

The judgment entered in the court below is
Affirmed.