89 S.E.2d 727 (1955)
243 N.C. 12
STATE of North Carolina ex rel. UTILITIES COMMISSION and the Alexander Railroad Company et al.
v.
STATE of North Carolina; the Department of Agriculture of the State of North Carolina; the North Carolina State Grange; the Farmers Cooperative Council; the Farmers Cooperative Exchange; and the North Carolina Farm Bureau Federation.
No. 450.
Supreme Court of North Carolina.
November 2, 1955.
*730 W. T. Joyner, H. E. Powers, Raleigh, A. J. Dixon, H. J. Karison, Washington, D. C, for petitioners-appellants.
Harry McMullan, Atty. Gen., I. Beverly Lake and John H. Paylor, Asst. Attys. Gen., for the State and Department of Agriculture of North Carolina, appellees.
Broughton & Broughton, Raleigh, for North Carolina Farm Bureau Federation, North Carolina State Grange, Farmers Cooperative Council, and Farmers Cooperative Exchange, appellees.
BARNHILL, Chief Justice.
The order entered herein by Harris, J., on 4 February 1954, at Chapel Hill, N. C., was signed out of the County of Wake and out of the District without notice to the adversary parties and without consent that the cause might be thus heard. The order is void. Patterson v. Patterson, 230 N.C. 481, 53 S.E.2d 658; Shepard v. Leonard, 223 N.C. 110, 25 S.E.2d 445, and cases cited; Jeffreys v. Jeffreys, 213 N.C. 531, 197 S.E. 8; Collins v. Wooten, 212 N.C. 359, 193 S.E. 385; Cahoon v. Brinkley, 176 N.C. 5, 96 S.E. 650; McNeill v. Hodges, 99 N.C. 248, 6 S.E. 127; Godwin v. Monds, 101 N.C. 354, 7 S.E. 793. The notice of appeal therefrom did not serve to take the case out of the Superior Court or to deprive the proper Superior Court Judge of jurisdiction in Wake County. Ferrell v. Hales, 119 N.C. 199, 25 S.E. 821; State v. Miller, 225 N.C. 213, 34 S.E.2d 143. Hence the cause pending before us on this appeal is the order signed by Harris, J., in Wake County on 3 March 1954 from which the petitioners appealed.
The Utilities Commission is not a policy-making agency of the State. That prerogative rests in the General Assembly. While its long line of decisions cited in the opinion written by Hunter, Commissioner, may establish a uniform policy of the Commission, it does not and cannot be regarded as State policy.
The Commission expressed the fear that it would lose its jurisdiction over intrastate rates unless it made the intrastate schedule of freight charges conform to the schedule adopted by the I. C. C. for interstate commerce and states in its opinion that it had assured the I. C. C. that if it was permitted to retain jurisdiction over the intrastate freight rates to be charged by railroads operating in North Carolina, then it, the Commission, would establish rates on a parity with the rates already approved by the I. C. C. for interstate shipments. In view of these facts, we are unable to perceive how the Commission could hear the evidence of the protestants and weight and consider the same with the cold neutrality of impartial judges.
Be that as it may, this case comes within a very narrow compass. The Legislature, in adopting G.S. § 62-124, has provided the standard to be followed by the Utilities Commission in fixing charges to be made by public utilities operating in this State. State ex rel. Utilities Commission v. State (State ex rel. Utilities Commission v. Southern Bell Tel. & Tel. Co.), 239 N.C. 333, 80 S.E.2d 133. It may be that this standard is outmoded, and some other more feasible procedure should be provided. That is a question for the General Assembly to determine. So long as the *731 law remains as it is now written, it is binding both upon the Commission and upon this Court. It is frankly stipulated that the petitioners had no testimony tending to show, and they were unable to prove, the fair value of their respective properties used and useful in conducting their intrastate business, separate and apart from their interstate business. This being true, the order entered by the Commission is unsupported by evidence of the type required by this statute. It follows that the court below committed no error in entering its order dated 3 March 1954.
In Ex parte 175 the I. C. C. granted a fifteen per cent increase in interstate rates only. It is apparent that it anticipated that the rate-making agencies in the several States would grant a like increase for intrastate shipments of freight. The Mississippi Public Service Commission declined to fix rates on a parity with the increased interstate rates. Thereupon the railroads petitioned the I. C. C. for the requested increase. The petition was allowed. The Mississippi Commission sought to restrain the enforcement of the increase in intrastate rates, and a three-judge District Court held that there was no substantial evidence in the record to support the order of the I. C. C. and reversed. Mississippi Public Service Commission v. United States, D.C., 124 F.Supp. 809. On appeal the judgment entered was affirmed by per curiam opinion, Illinois Cent. R. Co. v. Mississippi Public Service Comm., 349 U.S. 908, 75 S.Ct. 599.
In Louisiana the same procedure was had except that the three-judge District Court affirmed the order of the I. C. C. Louisiana Public Service Commission v. United States, D.C., 125 F.Supp. 180. This judgment was affirmed on appeal in a per curiam opinion, 348 U.S. 921, 75 S.Ct. 291.
After Harris, J., signed his judgment reversing the order of the Commission, the Commission vacated its order. Thereupon the railroads petitioned the I. C. C. to increase intrastate rates so as to place them on a parity with rates fixed for interstate shipments. The petition was allowed. The State of North Carolina and certain farm agencies instituted an action in the District Court to enjoin the enforcement of said order. A three-judge District Court composed of Parker, Circuit Judge, and Gilliam and Warlick, District Judges, denied injunctive relief and dismissed the action. State of North Carolina v. United States, D.C., 128 F.Supp. 718. This judgment was affirmed by the Supreme Court on 10 October 1955, 76 S.Ct. 45, by percuriam opinion.
The three above-cited cases have no bearing on the question here presented. They are simply cited to disclose developments since the judgment appealed from was entered. In comparing those cases those cases with the case instituted before our Commission, we must bear in mind that the I. C. C., in granting the increase in intrastate rates, was acting under 49 U.S.C.A. § 13(4) which makes discrimination the criterion; whereas our Commission is confined to the standard prescribed by the State statute.
In neither the Mississippi nor the Louisiana case was the jurisdiction of the I. C. C. to intervene and fix intrastate freight rates specifically discussed or decided. The clear implication is that the United States Supreme Court sustains that authority. If this be trueas apparently it isit is merely one more incident in the ever-increasing centralization of authority in the Federal government. Even so, when resort is had to the Utilities Commission for an increase of intrastate rates, the Commission must follow our statute, let the final result as to jurisdiction be what it may.
In fact, the question here posed would now be moot except for the fact that during the period the Commission order was in force the railroads collected approximately one million dollars in freightage.
The judgment entered in the court below is
Affirmed.