STATE OF NORTH CAROLINA EX REL UTILITIES COMMISSION AND THE
ALEXANDER RAILROAD COMPANY, ET AL V. STATE OF NORTH
CAROLINA; THE DEPARTMENT OF AGRICULTURE OF THE
STATE OF NORTH CAROLINA; AND THE NORTH CAROLINA FARM
BUREAU FEDERATION.

(Filed 12 June, 1959.)

1. **Appeal and Error § 60: Judgments § 32: Utilities Commission § 6—**
**Reversal of order of Utilities Commission on ground that it was**
**not supported by evidence is not res judicata.**

Where judgment of the Superior Court, reversing an order of the
Utilities Commission granting an increase in rates, is affirmed on appeal
to the Supreme Court on the ground that the evidence before the Utili-
ties Commission was insufficient to support the order, and on petition
to rehear it is expressly provided that the decision did not preclude
the carriers from thereafter filing a petition before the Utilities Com-
mission and offering evidence in support of the prior order of the Com-
mission, the decisions become the law of the case and authorize the
carriers' petition to reopen the case so that they might offer evidence
in support of the order, and such further proceedings being had in the
original cause, the order of the Commission putting into effect the in-
crease in rates upon supporting competent, material and substantial
evidence does not involve retroactive rate making, and the principle of
*res judicata* is inapposite.

2. **Carriers § 5:     Utilities Commission § 3—**

An order of the Utilities Commission granting an increase in intra-
state rates of carriers upon its finding that such increase was necessary
to give the carriers a reasonable return on their investment of properties
used in their intrastate businesses, upon supporting evidence as to the
proportion and valuation of the properties used in the intrastate busi-
ness, operating costs, etc. conforms to G.S. 62-124, and will be upheld.

3. **Utilities Commission §§ 3, 5— In ordering increase in intrastate**
**rates Utilities Commission may take statistical evidence of major**
**carriers as typical of all the carriers.**

Where proceedings by railroad carriers for an increase in intra-
state rates is heard upon the theory that the rate conditions of the
four major carriers were reasonably typical of the others, and the
major carriers introduced competent, material and substantial evidence
supporting the findings of the Utilities Commission upon which an in-
crease in rates is ordered, protestants may not for the first time on
appeal object that the order granting such increase of intrastate rates
for all the carriers was not supported by statistical evidence of the
smaller carriers, and it is error for the Superior Court to affirm the
order as to the major carriers and remand the cause for the intoduction
of evidence in regard to the other carriers, and the ruling of the Com-
mission granting the increase in rates as to all the carriers is affirmed.

APPEAL by (1) Alexander Railroad Company and twenty other
railroads, naming them, in North Carolina, and Meade Corporation,

and North Carolina Farm Bureau Federation; and (2) by the State of North Carolina; and North Carolina Department of Agriculture, from judgment of *Clark, J.*, at Second Regular August Civil Term 1958 of WAKE (docketed and argued in Supreme Court as Number 457, Fall Term 1958) — in which after findings of fact, and conclusions of law are made, it is ordered, adjudged and decreed that this case be and the same is remanded to the North Carolina Utilities Commission for further proceeding and such hearing as will allow each of the petitioners which has not already done so the opportunity to present evidence of the revenues, expenses, and investments, as required by law, and thereafter to enter the proper order as to each petitioner and in the event none of the other petitioners do so, to amend its order so as to make the increase in rates and charges applicable to the Southern Railway Company, the Seaboard Air Line Railroad Company, the Atlantic Coast Line Railroad Company and the Norfolk Southern Railway Company,— it not being intended or purposed to require the hearing of further evidence as to these last named petitioners.

The appellants except and assign error.

*Joyner & Howison, Simms & Simms, Ehringhaus & Ellis for Railroads, appellants.*

*Broughton & Broughton for N. C. Farm Bureau Fed.*

*Malcolm B. Seawell, Attorney General, F. Kent Burns, Assistant Attorney General for the State of North Carolina and North Carolina Department of Agriculture.*

WINBORNE, C. J.  For historic background of this proceeding see *Utilities Commission v. State,* 243 N.C. 12, 89 S.E. 2d 727, and s. c. on rehearing, 243 N.C. 685, 91 S.E. 2d 899, to which, and the records on which they are based, reference is here made for statement of facts involved.

Nevertheless, a recital in substance of salient facts is appropriate to this appeal.

Reference thereto reveals that on 3 January, 1952, the Utilities Commission of North Carolina granted petition of "the railroads operating in the State of North Carolina" for a six per cent increase in their freight rate schedules for intrastate shipments.

And on 2 June, 1952, "the railroads operating in the State of North Carolina" petitioned the North Carolina Utilities Commission for authority to make additional increase of nine per cent in the intrastate rates and charges in North Carolina which when added to the

previous increase of six per cent would correspond with the interstate increase, generally fifteen per cent, authorized by the Interstate Commerce Commission by its order and report of 11 April, 1952, in Ex Parte 175, 284 ICC 589, such increases to expire on 28 February, 1954, unless sooner cancelled, changed or extended.

The petition so made came on for hearing before the North Carolina Utilities Commission properly constituted, and after notice, and was heard from time to time. At hearing on 9 February, 1953, the State of North Carolina and the Department of Agriculture of the State of North Carolina, the North Carolina State Highway Commission, numerous farm organizations, shippers and associations of shippers appeared in protest against the requested increase in the rates.

On 9 July, 1953, the Utilities Commission entered its final order in substance authorizing the petitioning railroads to increase their rates and charges for the transportation of freight in intrastate commerce within the State of North Carolina by fifteen per cent, including the six per cent increase previously allowed— the increase to expire 28 February, 1954.

Moreover, adverting to the record of the order of the Commission, dated 9 July, 1953, this appears:

"Upon consideration of all the evidence in this case, the Commission finds that (except in certain respects) the intrastate freight rates now in effect within the State of North Carolina are approximately 9% below the level of interstate rates on traffic of the same nature moving under similar conditions to and from points in this State, and that, subject to certain exceptions set out by the Commission, in its order of January 3, 1952, authorizing the 6% rate increase, the additional increase in intrastate rates herein requested amounting to approximately 9% is fair, just and reasonable."

The State of North Carolina and the Department of Agriculture of the State of North Carolina in due course of procedure appealed to the Superior Court of Wake County, North Carolina. And after hearing, Harris, Judge resident of Seventh Judicial District, and in Wake County on 3 March, 1954, signed judgment presented by the appellants, ordering, adjudging and decreeing that the said order of Utilities Commission dated 9 July, 1953, be reversed, from which the twenty-five railroads operating within the State of North Carolina appealed to Supreme Court. For decisions see *Utilities Commission v. State,* 243 N.C. 12, and s. c. on rehearing 243 N.C. 685.

The judgment entered, in the Superior Court, from which the appeal was taken, was affirmed in opinion by *Barnhill, C. J.*

Thereafter, in due time, Alexander Railroad Company and all other railroads operating in the State of North Carolina, listed on appendix A, attached thereto, petitioned for rehearing on the several grounds shown in the record of the petition. "The petition (was) allowed for the sole purpose of making an additional statement concerning the precise scope of the decision."

Thereupon the Court, in denying petition to rehear, in opinion by *Barnhill, C. J.*, 243 N.C. 685, 91 S.E. 2d 899, after referring to the report of the original opinion and to the purpose for which rehearing is allowed, had this to say: " * * * we still adhere to the original decision. The question there decided is not now before us for review. The Commission found and concluded that it was necessary for the petitioners to raise their intrastate freight rates by nine per cent in order to provide just and reasonable compensation for the service rendered by them. The Superior Court reversed. We affirmed the judgment of the Superior Court for the reason that the Commission, in making its findings and conclusions of fact and entering its order allowing an increase in the freight tariffs theretofore charged by the petitioners, did not follow the standards provided by the pertinent law of the State. Our decision rested exclusively on that conclusion. We did not discuss or decide whether the increase allowed was just or unjust, reasonable or unreasonable. That is still an open question as to the period the Utilities Commission order was in effect.

"The former opinion in this case constituted no estoppel against the petitioners which prevents them from filing a petition at this time requesting that an order be entered affirming the increase *nunc pro tunc.* However, should the petitioners elect to pursue the matter further, the Commission must determine what increase, if any, was necessary during the period its order was in force to afford the petitioners a fair return on their property used and useful in connection with their intrastate business under the standard prescribed by our statute, G.S. Ch. 62 Art. 7 as construed by this Court. *Utilities Comm. v. Telephone Co.*, 239 N.C. 333, 80 S.E. 2d 133. In determining the merits of a petition, due regard must be had in particular for the provisions of G.S. 62-124. It was stated 'or stipulated' by counsel for petitioners during the original hearings that the petitioners did not have available and could not offer evidence under the provisions of G.S. 62-124. We assume counsel meant such evidence was not then available to them. Be that as it may, they are now at liberty to attempt to meet the requirements of that statute if they so desire, unaffected by the original opinion except as herein noted.

"This Court fully realizes that the value of the properties owned

by the several petitioners used and useful for their intrastate traffic cannot be determined with mathematical exactitude. But they can no doubt approximate the rateable proportion of their property devoted to intrastate traffic and offer evidence of other facts and circumstances in respect thereto sufficient in probative force to enable the Commission to make findings of fact under our statute, and issue such order as it determines the facts found may warrant. In any event this Court knows of no statute or rule of law which denies the petitioners the right to attempt to do so if they are now so advised. Subject to the explanatory comments herein made, the petition to rehear is denied."

Thus the original decision as so clarified became and is the law of the case, and binding on the parties and on the Court. Hence it appears that the case was open for further proceedings as there outlined. Therefore the doctrine of *res judicata* is inapplicable.

Thereafter on 2 July, 1956, and within the authority so granted, the Alexander Railroad Company, and all other railroads operating in the State of North Carolina, as specifically shown in appendix A thereto, petitioned the North Carolina Utilities Commission "for re-opening and further hearing," and set forth that "On November 2, 1953, the Supreme Court of North Carolina, in affirming the March 3 judgment of the court below, held that where the railroad had no testimony tending to show the fair value of their respective properties used and useful in conducting their intrastate business, separate and apart from their interstate business, the order entered by the Utilities Commission was unsupported by evidence and was improper"— citing *State of North Carolina ex rel Utilities Commission* and the *Alexander Railroad Company et al vs. State of North Carolina, et al,* 243 N.C. 12, 89 S.E. 2d 727, and asked the "Commission to reopen this proceeding * * * to afford them an opportunity to present additional evidence in conformity with the provisions of G.S. Sec. 62-124, as interpreted by the Supreme Court of North Carolina in the above mentioned decisions, and that after said further hearing the Commission find that the applicable rates during the period the Commission's order was in effect were just, reasonable and otherwise lawful and for such other and further relief as to the Commission may seem just and proper."

Thereafter, on 17 July, 1956, the State of North Carolina and North Carolina Department of Agriculture, protestants, answering the petition of the Railroads "for re-opening and further hearing" while admitting in the main allegations of the petition, they aver that the North Carolina Utilities Commission was created by Act of the Gen-

eral Assembly; that its rate making is governed by statute; that it has no authority to make rates retroactive; that the decision filed 21 March, 1956, by the Supreme Court and reported in 243 N.C. 685 is judicial matter subject to opinion reported in 243 N.C. 12, and is not binding upon the Commission; that all matters and things in controversy have been fully adjudicated and would be *res judicata* and said judgment of the Supreme Court in 243 N.C. 12 is hereby pleaded in bar of any further rights petitioners might have to increase rates for the period beginning with final order of the Commission up to and including opinion of the Supreme Court affirming Judge Harris. Wherefore they pray that the petition be dismissed for the reasons enumerated in this answer.

The Commission denied the request and overruled the motion to dismiss the petition to reopen, and by directive issued 17 July, 1956, set the matter for further hearing on 2 October, 1956. This ruling is deemed proper and consistent with the decision of this Court.

Pursuant thereto the record of case on appeal contains statement of evidence offered by the applicant railroads on hearing before the Commission.

The record of case on appeal also discloses this recitation by and declaration of the Commission in its order: "The protestants have filed exhaustive briefs, citing numerous rulings of numerous courts on the questions of retroactive rate makings; rulings *'nunc pro tunc'* and *'res judicata'*.

"We adhere to our original position. We conclude that neither the principle of retroactive rate-making or *'res judicata'* is invokable here. It is as simple as this: The railroads do not file, bring or prosecute a new action. They make a motion to reopen and take additional testimony in the same action. The rates they seek to establish as being just, reasonable and lawful by this motion have already been made. In fact, they were made on July 9, 1953, put into effect on July 16, 1953, and remained in effect and were collected by the railroads to and including February 28, 1954. By motion in the cause the railroads seek to establish the justness, reasonableness and lawfulness of rates already established and collected. The principle of retroactive ratemaking is not involved. The situation is that the North Carolina Utilities Commission found the rates which the railroads put into effect on July 16, 1953, and collected until February, 1954, to be reasonable, just and lawful * * * ." In the light of the former opinion, 243 N.C. 685, this appears to be a logical deduction.

The record of case on appeal also discloses order of the Utilities

Commission in which, after reviewing the evidence, these findings of fact were made:

"1. The intrastate rates and charges in effect by the railroad companies in North Carolina on July 9, 1953, were not sufficient to produce revenue adequate to provide a fair, reasonable and just rate of return on property committed to intrastate use and used and useful in producing revenue.

"2. The rates and charges prescribed by the order of the North Carolina Utilities Commission in this matter on July 9, 1953, were reasonable, fair, just and lawful.

"3. The increase in intrastate rates and charges for the railroads as prescribed in the order by the Commission on July 9, 1953, in this matter was necessary at that time and at all times between that date and February 28, 1954, to afford the railroads a fair return on their properties used and useful in connection with their intrastate operations in North Carolina."

And in the record of the order of June 21, 1957, it is recited that "in the further hearing after the matter had been re-opened following the Supreme Court decisions, the railroads undertake to separate the inter- and intrastate properties and the inter- and intrastate operations with a view to showing that they were not earning a fair rate of return on July 9, 1953, on their intrastate properties in North Carolina used and useful in intrastate operations."

It is noted that "eighty-seven per cent of the intrastate business and eighty-nine per cent of the interstate business in North Carolina is done by the four larger railroads; namely, Southern, Seaboard Air Line, Atlantic Coast Line and Norfolk Southern. A committee of four, one from each of said railroads, was appointed to make a study of the properties and operations of these four railroads and devise formulae and means for separating intrastate properties and operations from interstate. Exhibit 5A as introduced shows statistical results of the work of this committee."

Further recitation is too voluminous to admit of quotation.

And the Commission further concluded that "the methods used by the petitioners in separating intrastate operations and property from interstate operations and property were sufficient to reasonably establish the North Carolina intrastate operating expenses, the revenue derived from such operations and the value of the intrastate properties used and useful in producing such revenue."

Thereupon the Commission further concluded that "intrastate rates and charges of the railroads on July 9, 1953, were not sufficient to provide a fair, reasonable and just rate of return on their intrastate

properties used and useful in producing such revenue"; and that the increase in rates and charges allowed and granted to the railroads by the order of the North Carolina Utilities Commission on July 9, 1953, was necessary at that time, and has been necessary at all times since, in order that the railroads might realize a fair, just and reasonable rate of return on their intrastate properties used and useful in producing such revenue in North Carolina.

Thereupon the Commission ordered "that increase in rates and charges prescribed by the North Carolina Utilities Commission for the petitioners in this cause in its order issued on July 9, 1953, was fair, just and reasonable and necessary to provide a fair, just and reasonable rate of return to the petitioners on the value of their intrastate investment in property in North Carolina used and useful in their intrastate operations."

And the record shows that from order of June 21, 1957, the State of North Carolina, the Department of Agriculture of the State of North Carolina, the State Highway Commission, the North Carolina Farm Bureau Federation, the Mead Corporation and other protestants, gave notice of appeal to the Superior Court of Wake County, and requested that the Commission transmit the record of the proceedings, certified under the seal of the Commission, for a determination by that court of all matters arising upon such appeal in accordance with the provisions of Chapter 62 of the General Statutes of North Carolina, and for grounds of appeal, say that said order and orders are unlawful, unjust, unreasonable and unwarranted, and specifically that: Here follows eleven grounds of exception— in no one of which is there any specific reference to later contention that the evidence offered by petitioners relates only to the four major railroads and not to the twenty-one minor railroads.

And on hearing in Superior Court at First August Term 1958, specifically 8 September, 1958, upon the record so certified by the Utilities Commission, and being reviewed, the court finds:

"1. That this (is) the same proceeding instituted by the Alexander Railroad Company, and others hereinafter named as petitioners, for authority to increase their intrastate freight rate in North Carolina and which was originally heard by the North Carolina Utilities Commission and Order issued by the Commission on July 9, 1953, granting the increase sought. Which Order was reversed by Honorable W. C. Harris, Judge of the Superior Court, on March 3, 1954, which Judgment was upheld by the Supreme Court of North Carolina, its opinion being reported in Volume 243 at page 12 of the North Carolina Supreme Court Rep., and was thereafter reopened for further

14—250

hearing by the North Carolina Utilities Commission following the opinion of the North Carolina Supreme Court reported in Volume 243 *at* page 685 of its report (which opinion, as interpreted by this Court, had the effect of remanding this cause to the Commission for further hearings this being a continuation of the same cause the principle of *res judicata* and the rule of law which forbids retroactive rate making are not applicable to the Order of the Commission under review by this Court).

"2. At the hearings held in this proceeding before the Utilities Commission, upon which the Order of June 21, 1957 is based, only four of the petitioning railroads, namely, the Seaboard Air Line Railroad Company, the Southern Railway Company, the Atlantic Coast Line Railroad Company, and the Norfolk Southern Railway Company presented competent, material, and substantial evidence in support of increased intrastate rates and charges as prescribed in the Order of the Commission, and as to these petitioners the Order is fully justified. However, the other petitioning railroads (which, as disclosed by the record, constitute 13 per cent of the intrastate railroad activity in this State)"— naming them— "presented no evidence and no evidence was heard by the Commission, as disclosed by the records, as to the revenues, expenses, or investments of any of these companies and the increase in rates and charges approved by the orders of the Commission for their companies are not supported by any competent, material, or substantial evidence.

"3. This court is of the opinion that under General Statute 62-26.10 it does not have the authority to amend the order of the Utilities Commission so as to approve the same insofar as it pertains to the four major railroad companies which presented the competent, material, and substantial evidence in support of the increase in intrastate rates and charges as prescribed in the Order and disapprove the same as to the other petitioning railroad companies which have failed to do so. It further appearing to this court that in view of the apparent practice of the Commission to apply uniform railroad rates, as was done in this case, and inasmuch as this specific objection as to the propriety of approving rates and charges for the petitioning railroads not offering evidence was raised for the first time after the last order of the Utilities Commission at the hearing of this matter before this Court, the ends of justice require that these railroad companies be given a further opportunity to present competent, material, and substantial evidence to the Commission before a final determination of this proceeding: * * *

"4. That as to the exceptions filed by the protestants, it is the

opinion of this court that Exceptions Nos. 1, 2, 3, 7, 8 and 11 are not supported by the record under the law of North Carolina for the reasons set out above, and exceptions Nos. 4, 5, 6, 9 and 10 are well taken only as to those petitioners above mentioned which did not offer evidence before the Commission.

"Now, therefore, it is Ordered, adjudged and decreed that this case be, and the same hereby is, remanded to the North Carolina Utilities Commission for further proceeding and such hearing as will allow each of the petitioners which has not already done so the opportunity to present evidence of its revenues, expenses, and investments, as required by law, and thereafter to enter the proper order as to each petitioner and in the event none of the other petitioners do so, to amend its order so as to make the increase in rates and charges applicable to the Southern Railway Company, the Seaboard Air Line Railroad Company, the Atlantic Coast Line Railroad Company and the Norfolk Southern Railway Company. It is not the intent nor purpose of this order to require the hearing of further evidence as to these last-named petitioners."

Appeal of Petitioners:

The twenty-one minor railroads except to and appeal from the judgment of Clark, J., above fully set out, upon several grounds, and stressfully contend, at the outset, that the protestants are not in a position to raise in the Superior Court for the first time, the objection that the evidence was insufficient as to these appellant railroads on the grounds that the operating statistics were those of the four major railroads. Exceptions 3, 5 and 6. Assignments of error 2 and 3.

A review of the entire proceedings since the institution of it leads to conclusion that the contention is meritorious.

And bearing in mind that the statute, G.S. 62-26.10 pertaining to record on appeal and extent of review, declares "the appellant shall not be permitted to rely upon any grounds for relief on appeals which were not set forth specifically in his petition for rehearing by the Commission."

Applying this statute to the facts of instant case the point raised by the protestants for the first time after the last order of the Utilities Commission, at the hearing of the matter before Superior Court, seems to come too late.

Indeed the original petition was filed jointly by all the railroads in North Carolina, twenty-five in number. And the record discloses that the case has been tried throughout on the theory that the rate conditions of the four major petitioning railroads handling 87 per cent of all the intrastate traffic in North Carolina, were reasonably

typical of the other twenty-one petitioning railroads, handling the remaining 13 per cent, and that the making of a case for the four petitioning major railroads would be a case for all.

It may be noted that the record in this case on former appeal, No. 449, Fall Term of 1954, from Wake, incorporated by reference as a part of the record in this case, shows that in the original case before the Utilities Commission the twenty-five petitioning railroads presented operating statistics for only the four railroads, Southern, Seaboard, Atlantic Coast Line and Norfolk Southern, and an affiliate of one of them, all as set out there.

And all of this evidence was offered for the purpose of showing the operating results of the railroads as a group— not as individuals. The requested rate increase was to apply to all railroads operating in North Carolina. And attention is called to the fact that all through the proceeding the railroads were all treated as a group and the rate increase was treated as applying to all railroads operating in the State. That was the theory of the case.

And it seems clear from the record and from the order of the Commission here under review that the Commission accepted the evidence for the four major railroads as reasonably applicable to all the railroads. Therefore, it would seem that as disclosed by the record the revenues, expenses and investments of all these companies, and the increase in rates and charges approved by the order of the Commission for their companies are supported by competent, material and substantial evidence. The order indicates that the rates charged by all the railroads are reasonable, just and proper. And by statute, G.S. 62-123, the rates or charges established by the Commission are deemed just and reasonable. Hence the ruling of the judge below in this respect must be reversed, and the ruling of the Utilities Commission, in approving the increase in intrastate rates, sustained.

Now as to the appeal of protestants from judgment rendered by Judge Presiding, as aforesaid, the correctness thereof is challenged in the main upon the contention that the court erred in overruling the pleas of *res judicata.*

It is held hereinabove in recitation of historical data that the opinion of the former appeal, 243 N.C. 12, 89 S.E. 2d 727, and the explanatory statement on petition to rehear, 243 N.C. 685, 91 S.E. 2d 899, constitute the law of the case and are binding upon the parties and upon the Court.

Manifestly the case was left open for petitioners to take further action to have the case reopened in manner followed by the petitioners.

Other assignments of error by the protestants have been duly considered, and in them prejudicial error is not made to appear.

Therefore, for reasons stated, the order of the Utilities Commission of 21 June, 1957 is approved and sustained.

As to appeal of Petitioners— Error.

As to appeal of Protestants— Affirmed.