Louis A. BIANCO, Plaintiff,

v.

BOARD OF TRUSTEES OF LOCAL 816 LABOR AND MANAGEMENT PENSION TRUST, Board of Trustees of Local 852 General Warehousemen's Union Pension Fund and Board of Trustees of Local 202 Union Pension Fund, Defendants.

No. 78 C 601.

United States District Court, E. D. New York.

July 17, 1980.

Melvin R. Cannon, Bay Shore, N. Y., for plaintiff.

Cohen, Weiss & Simon, New York City, for defendant Local 816 Pension Trust by Samuel J. Cohen, Keith E. Secular, New York City.

Shapiro, Shiff, Beilly, Rosenberg & Fox, New york City, for defendants Local 852 Pension Fund and Local 202 Pension Fund by Sidney Fox, New York City.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff in this action brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132,[1] was employed successively between 1952 and 1975 under the respective jurisdictions of the three local unions of the International Brotherhood of Teamsters whose pension funds are sued as defendants herein. He seeks pension payments from the date of his retirement due to disability and a declaration of entitlement to payments until the end of his disability or his death. The action is now before the court on the parties' cross-motions for summary judgment based upon a set of stipulated facts and the plans of the three defendant pension funds. The parties have also submitted the National Reciprocal Agreement of the Eastern Conference of Teamsters ("National Reciprocal Agreement") and the Local Reciprocal Agreement between the Local 816 Pension Fund and the Local 202 Pension Fund ("Local Reciprocal Agreement").

Summary judgment may be rendered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), F.R.Civ.P. Pursuant to the 1963 amendments, Rule 56(e) provides that when a *motion for summary judgment* is supported by proper affidavits, "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

In determining whether to grant a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967), *quoted in SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). It must accept as true factual statements in the opposing party's affidavits, draw all permissible inferences in that party's favor, *Hill v. A-T-O, Inc.*, 535 F.2d 1349 (2d Cir. 1976), and resolve any doubts in favor of the latter, *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc., supra.* "The very mission of the summary judgment procedure [however] is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Adv.Com. Note to Proposed Amendments to Rule 56(e), 31 F.R.D. 648 (1962). See generally *Donnelly v. Guion*, 467 F.2d 290, 292 (2d Cir. 1972); *Applegate v. Top Associates, Inc.*, 425 F.2d 92 (2d Cir. 1970).

After a careful examination of the stipulated facts and documents submitted on the instant motions, it is the court's view that there exist no genuine issues of material fact that could forestall a grant of summary judgment and that plaintiff is entitled to judgment as a matter of law.

It is undisputed that plaintiff, who is now 55 years of age, worked under the jurisdiction of Local 816 from July 1, 1952, through September 30, 1965, earning 12¾ years of pension credits; that he worked under the jurisdiction of Local 852 from August 24, 1965, through March 30, 1975, earning nine and two quarters years of pension credits; and that he earned an additional two quarters of pension credit while working under the jurisdiction of Local 202 from April 1, 1975 until November 8 of that year, when he became disabled due to coronary thrombosis. It is also stipulated that since the day he was last employed, plaintiff has

---

1. Section 1132, the civil enforcement provision of Chapter 18, Title 29, relating to pension plans, provides in relevant part:

"(a) A civil action may be brought—
(1) by a participant or beneficiary—
\* \* \* \* \* \*

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;"

been, and continues to be, totally disabled, and has been certified as totally disabled by the Social Security Administration. For 11 months immediately following his thrombosis plaintiff received disability income insurance benefits provided by the Local 202 Welfare Fund. Finally the parties have stipulated that all defendants are participants in the National Reciprocal Agreement.

An understanding of the role of the Reciprocal Agreements is important to the disposition of this case. The National Reciprocal Agreement, signed by the pension funds of local unions of the International Brotherhood of Teamsters, has as its purpose the provision of pensions for union members who remain within the international union but work under the jurisdictions of two or more local unions. Although such workers enjoy continuous membership in the international union, they may not have accrued sufficient work credit under the plan of any one local pension fund to entitle them to the full benefits they would receive had they not transferred from one local to another. To effect this purpose, each signatory fund agrees to incorporate into its pension plan Exhibit A to the National Reciprocal Agreement, which embodies the eligibility and other provisions governing what are termed "partial pensions." The plans of the Locals 816 and 852 funds have adopted Exhibit A verbatim as, respectively, Article II B and Article III A. The Local 202 fund plan has substantially similar, although not identical, provisions in its Article IV A, which is entitled "Pro Rata Pensions." [2] The Local Reciprocal Agreement, signed by the pension funds of Local 816 and 852, has the similar purpose of providing pensions to members whose employment was split between the jurisdictions of the two parties to that agreement.

Each defendant has denied plaintiff's application for a partial or pro rata pension. It is agreed, therefore, that the sole issue before the court is whether, under the terms of defendants' plans, plaintiff is entitled to a pension to be paid proportionately by defendants based on his disability and his periods of employment under the jurisdictions of Locals 816, 852 and 202.

Since the eligibility provisions pertaining to partial pensions in the plans of Locals 816 and 852 are identical, they may be considered together. Under both plans, an employee must first show that he would be eligible for one of that plan's pensions if his "combined service credits" were treated as service credits under the plan. Local 816 plan Art. II B, § 5(a); Local 852 plan Art. III A, § 5(a). Combined service credit is defined as the total of an employee's service credit earned directly under a given plan plus service credit accumulated under one or more "related plans." Local 816 plan Art. II B, §§ 3, 4; Local 852 plan Art. III A, §§ 3, 4. Pursuant to § 1 of the National Reciprocal Agreement, each signatory recognizes the plans of other signatories as related plans, and this is confirmed by provisions in both plans. Local 816 plan Art. II B, § 2; Local 852 plan Art. III A, § 2. Therefore, under the two plans, plaintiff has accumulated 22¼ years of combined service credits.

Under Article II, § 8 of the Local 816 plan, plaintiff is eligible for a "Total Disability Pension" because, as is stipulated, he is both totally disabled and has more than 10 years of pension credit under that plan.

**2.** Section 1 of Exhibit A to the National Reciprocal Agreement which has been adopted as Local 816 plan Art. II B, § 1, and as Local 852 plan Art. III A, § 1, constitutes a statement of the purpose underlying partial pensions and reads:

"Purpose___Partial Pensions are provided under this Plan for employees who would otherwise lack sufficient service credit to be eligible for any pension because their years of employment were divided between different pension plans or, if eligible, whose pensions would be less than the full amount because of such division of employment." Section 1 of Article IV A of the Local 202 plan provides:

"Purpose: Pro Rata Pensions are provided under this Plan for men who would otherwise be ineligible because their years of employment have been divided between Covered Employment and Employment covered by another pension plan or whose pensions would otherwise be in less than the full amount because of such division of employment."

Since he incurred a total disability between the ages of 50 and 65, plaintiff would be eligible for a "Disability Pension" pursuant to Article II, § 6 of the Local 852 plan if his combined service credits of more than 22 years were treated as service credits under the Local 852 plan. Nor can it be contested that plaintiff has fulfilled the next requirement for partial pension eligibility in that he has at least two years of actual employment under each of the jurisdictions of Locals 816 and 852. Local 816 plan Art. II B, § 5(b); Local 852 plan Art. III A, § 5(b).

Defendants point to the "break in service" provisions of their plans and argue that, because there has been a break in the continuity of plaintiff's pension credits, he has forfeited his prior accumulated credits and is therefore ineligible for any pension. This assertion, however, is incorrect in light of provisions in each plan that expressly exclude pension credits earned under related plans from any period of service discontinuity that might cause a cancellation of prior credits. Local 816 plan Art. II B, § 6; Local 852 plan Art. III A, § 6.

Plaintiff also satisfies the requirement in each plan that no pension be payable to him from a related plan independently of its provisions for a partial pension. Local 816 plan Art. II B, § 5(d); Local 852 plan Art. III A, § 5(d). Defendants do not claim that the disability income insurance proceeds plaintiff received in 1975 and 1976 from the Local 202 Welfare Fund, nor any other benefits that may be payable to him, constitute a pension that might render him ineligible for a partial pension pursuant to the above-cited provisions.

Finally, the Local 816 and 852 plans require that plaintiff be eligible for a partial pension from a related plan and from "the terminal plan," which is defined as that plan associated with the local union which represented plaintiff at the time of, or immediately prior to, his retirement. Local 816 plan Art. II B, § 5(c); Local 852 plan Art. III A, § 5(c). It is undisputed that plaintiff was covered by the Local 202 plan at the time of his retirement. Issue is joined, however, over defendants' conten-tion that plaintiff is ineligible for a partial or pro rata pension under the Local 202 plan.

It is conceded that the Local 202 plan has recognized the plans of Locals 816 and 852 as related plans under the National Reciprocal Agreement. (Local 202 brief at 6.) Nonetheless, defendants assert that the terms of Article IV A of the Local 202 plan refer not to plans related by virtue of the National Reciprocal Agreement, but rather to related plans under a local reciprocal agreement between two pension funds. Since the Local 202 fund has entered into a local reciprocal agreement with the Local 816 fund but not with the Local 852 fund, defendants argue, the funds of Locals 202 and 852 have not recognized each other as related plans and plaintiff cannot be found to be eligible under Article IV A for a pro rata pension based on his continuous employment since 1952 under the jurisdictions of the three locals. Moreover, defendants conclude, his ineligibility under the Local 202 plan—"the terminal plan"—renders him ineligible for partial pensions from the other two funds.

In support of their construction of Article IV A of the Local 202 plan, defendants point out that the language of Articles II B and III A of the Locals 816 and 852 plans, respectively, has been adopted without change from Exhibit A to the National Reciprocal Agreement and refers to "partial pensions." On the other hand, the language of Article IV A of the Local 202 plan is slightly different from that proposed by Exhibit A to the National Reciprocal Agreement, and refers to "pro rata pensions." In this context, defendants also note that § 3 of the National Reciprocal Agreement provides that no change shall be made in the provisions of Exhibit A. Defendants assert that confirmation of their interpretation is found in Article II A of the Local 816 plan, which is entitled "Pro Rata Pensions—Local Reciprocal Agreement" and is substantially identical to Article IV A of the Local 202 plan.

While it may be that under Article IV A of the Local 202 plan pro rata pensions are

available to eligible employees pursuant to the Local Reciprocal Agreement, it must be noted that Article IV A itself makes no reference to either the Local or the National Reciprocal Agreements. Although the language of Article IV A is not identical to that of Exhibit A to the National Reciprocal Agreement, it seems that had Article IV A been intended to refer exclusively to pensions provided between plans related under the Local Agreement, as defendants contend, then the Local 202 plan would have included a separate article providing for partial pensions under the National Agreement, which is the format adopted by the Local 816 plan. In addition, it is relevant that Article IV A, § 4(d), of the Local 202 plan notes the fact of slightly differing terms and refers to certain pensions of related plans as "Pro Rata Pensions (or its equivalent provisions, regardless of name)."

In the light of the Local 202 fund's conceded participation in the National Reciprocal Agreement and its scheme providing for partial pensions, the court is of the view that a fair reading of Article IV A is that it provides for partial or pro rata pensions to be paid between pension funds related by virtue of the National Reciprocal Agreement.

Turning, then, to plaintiff's eligibility under the Local 202 plan, pursuant to Article IV A, § 2(B), he would qualify for a "Disability Award Pension" if his combined pension credits were treated as pension credits under the Local 202 plan. See Local 202 plan Art. IV A, § 4A(a). Satisfying the next requirement, plaintiff has one-half a year of actual employment under the jurisdiction of Local 202 plus more than one and one-half years of credit based on actual employment under the coverage of a related fund. Local 202 plan Art. IV A, § 4A(b). No pension is payable to plaintiff from a related plan independently of its provisions for partial or pro rata pensions, Local 202 plan Art. IV A, § 4A(d); and his pension credits under related plans cannot be considered "breaks in service" rendering plaintiff ineligible for a pension. Local 202 plan Art. IV A, § 4B. All these requirements

being satisfied, plaintiff is entitled to a partial or pro rata pension from the Local 202 fund, which was the plan under which he was last covered before his retirement. See Local 202 plan Art. 4A(c).

Accordingly, since there are no genuine issues of material fact precluding a finding that plaintiff is eligible for partial or pro rata pensions under the plans of each defendant, summary judgment is hereby granted in favor of plaintiff directing that he be paid by defendants in an amount to be determined pursuant to the provisions of Local 816 plan Article II B, § 8, Local 852 plan Article III A, § 8, and Local 202 plan Article IV A, § 5.

Settle form of judgment within 30 days from the date hereof.

So ordered.