**Marshall STEWART III and Evelyn Stewart, Plaintiffs,**

**v.**

**Governor James B. HUNT, Jr., In his Official Capacity, et al., Defendants.**

**No. 84–140–CIV–5.**

United States District Court,
E.D. North Carolina,
Raleigh Division.

Nov. 28, 1984.

Thomas C. Manning, Raleigh, N.C., for plaintiffs.

T. Buie Costen, Millard R. Rich, Jr., N.C. Dept. of Justice, Raleigh, N.C., for defendants.

## ORDER

JAMES C. FOX, District Judge.

Plaintiffs initiated this action pursuant to 42 U.S.C. §§ 1983, 1985(3) and 1986 by complaint filed February 17, 1984. Plaintiffs seek injunctive and declaratory relief as well as compensatory and punitive damages for injuries allegedly caused by defendants' refusal to renew a three-year lease that existed between the parties for the continued use of state property located at the North Carolina State Fairgrounds in Raleigh, North Carolina. The Stewarts predicate their action on a deprivation of their constitutional rights secured by the Fifth and Fourteenth Amendments. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343.

Named as defendants are the State of North Carolina; James B. Hunt, Jr., Governor of North Carolina; Jimmy Green, Lt. Governor of North Carolina; Rufus Edmisten, Attorney General; John Brooks, Commissioner of Labor; Thad Eure, Secretary of State; John Ingram, Commissioner of Insurance; Edward Renfrow, State Auditor; Harlan Boyles, State Treasurer; A. Craig Phillips, Superintendent of Public Instruction; James A. Graham, Commissioner of Agriculture; Jane Patterson, Secretary of the Department of Administration; Charles Grady, State Property Officer; William Parham, Deputy Commissioner of Agriculture; Alex Lewis, Comptroller of the Department of Agriculture; and Sam G. Rand, Manager of the North Carolina State Fair. Defendants Graham, Patterson, Grady, Parham, Lewis and Rand are sued in their individual and official capacities. The remaining defendants are sued solely in their official capacities.

This matter is presently before the court on defendants' motion to dismiss pursuant to Rules 12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure. Defendants argue (1) lack of personal jurisdiction; (2) lack of jurisdiction over the subject matter; (3) abstention; (4) claim preclusion; (5) Eleventh Amendment immunity; and (6) failure to state a cognizable constitutional deprivation under 42 U.S.C. § 1983. The parties have extensively briefed the relevant issues and defendants' motion is now ripe for disposition.

Before the court proceeds to address these contentions, a brief description of the allegations in the complaint is in order as a preface to the discussions which follow. In this description as well as in the subsequent substantive discussions, the court accepts the allegations of the complaint as true, as the law requires it to do. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).[1]

At the time plaintiffs complaint was filed, the Stewarts held a lease for certain buildings located at the Fairgrounds in Raleigh, commonly known as the "Flea Market Complex." This base lease was entered into on April 16, 1981, and expired on February 28, 1984.[2] Plaintiffs allege that a contract to renew the lease existed between themselves and defendants Lewis, Grady, Graham and Rand, individually and in their official capacities as employees of the State.

Plaintiffs contend the contract became effective on December 2, 1982, and provided that plaintiffs were to expend their own funds to repair and make habitable three buildings at the Fairgrounds.[3] In consideration of plaintiffs' expenditures, defendants allegedly agreed to provide plaintiffs with a new three-year lease before the expiration of the current lease. This lease was also to contain provisions for two (2) three-year renewals, thus totalling a potential nine year occupancy for plaintiffs.

In addition, plaintiffs contend that when the State completed its renovation of the Education and Commercial Buildings, they were to be permitted to operate from those areas as well. The final term of this agreement allegedly provided the current rental rates would remain in effect for the life of the new lease.

Plaintiffs proceeded to perform extensive renovation work on the buildings after a December 2, 1982, meeting with State officials, at which time plaintiffs believe the final *oral* agreement described above was reached. No written contract was signed at that time nor have plaintiffs pled the existence of any such document.[4] Defendants concede extensive renovation work took place at the Fairgrounds and that they knew of the work.

Plaintiffs allege they received continuous assurances from various state officials named as defendants, some of whom plaintiffs had dealt with for fourteen years, that they would be awarded the renewed lease as promised. The essence of plaintiffs' complaint is the State breached its December, 1982 agreement with the plaintiffs and awarded the new lease to a third party. Plaintiffs also contend that during the negotiation process, various State officials fraudulently misrepresented and conspired to conceal the State's position with respect to the process for awarding the new lease.

Defendants deny the existence of any oral or written agreement renewing plaintiffs' lease. Defendants further deny any fraudulent misrepresentations to plaintiffs, the existence of any conspiracy to conceal

---

**1.** With the exception of certain state court documents cited within this opinion, of which the court takes judicial notice pursuant to F.R.Evid. 201, matters outside the pleadings have not been considered in ruling on defendants' motion.

**2.** The base lease called for the rental to the Flea Market of the Education and Commercial Buildings.

**3.** The three buildings referred to are the Industrial Building, Poultry Building No. 1 and Poultry Building No. 2.

**4.** Any renewed lease required approval of the Governor and the Council of State. *See* N.C. GEN.STAT. §§ 146–27 and 146–29. Plaintiffs do not contend such approval was ever formally obtained.

the actual award process for the new lease and any attempt to deny plaintiffs a fair opportunity to gain a renewed lease.

■ On February 27, 1984, plaintiffs voluntarily dismissed Claims for Relief 5–8 of their complaint without prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure. In addition, plaintiffs amended their complaint to allege the Fourth Claim for Relief contained therein is predicated upon a violation of 42 U.S.C. § 1983 and not § 1985(3) as originally stated. This amendment effectively eliminates any § 1985(3) claim from the litigation.[5]

On March 14, 1984, the court denied plaintiffs' motion for a temporary restraining order and preliminary injunction, finding (1) plaintiffs had not met their burden of showing they would suffer irreparable injury without the requested relief; (2) granting the preliminary injunction would substantially harm the defendants and other interested parties, particularly the new third party lessee; and (3) plaintiffs had not met their burden of establishing they would likely succeed on the merits of this dispute.

The court will now proceed to consider *ad seriatim* all defendants' contentions heretofore summarized.

### (1). LACK OF PERSONAL AND SUBJECT MATTER JURISDICTION

■ Defendants' 12(b)(2) motion alleging lack of *in personam* jurisdiction is DENIED, as it is apparent on the face of the pleadings that both the controversy and the defendants have sufficient contacts with this forum to give the court the right to exercise judicial power over the defendants.

Defendants' 12(b)(1) motion alleging lack of subject matter jurisdiction is also DENIED, as 28 U.S.C. § 1331 and § 1343 have long been recognized as the jurisdictional counterparts to 42 U.S.C. § 1983 actions brought under the Constitution.

### (2). ABSTENTION

Defendants contend that even if the court has jurisdiction over this action, it nonetheless should abstain. According to defendants all the issues raised in this action are identical to those raised by plaintiffs in a pending state court action. The court does not agree.

On January 27, 1984, plaintiffs filed a pure breach of contract claim in the Superior Court of Wake County, North Carolina, predicated on essentially the same set of facts set forth in plaintiffs' complaint at bar. No federal or constitutional issue was raised in the state complaint. On February 8, 1984, Superior Court Judge B. Craig Ellis granted defendants' motion to dismiss pursuant to N.C.R.Civ.P. 12(b)(1) and (2).[6] Plaintiffs have appealed this ruling to the North Carolina Court of Appeals.

Were plaintiffs to prevail on appeal, it is possible the state courts would decide for them on the merits, thereby potentially mooting this action. According to the defendants, a federal court is required to abstain where issues of state law, which issues could moot the federal issues, will be decided by a state court.

■ Abstention is a judicially-created exception to the general grant of jurisdiction set forth in Article III of the Constitution. *See Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The doctrine allows federal courts to decline or postpone the exer-

---

**5.** Since plaintiffs fail to allege any cause of action under 42 U.S.C. § 1985(3), their Ninth and Tenth Claims for Relief premised on violations of 42 U.S.C. § 1986 must be dismissed. The most important requisite of an action under § 1986 is that there be a valid claim under § 1985. *Kaylor v. Fields,* 661 F.2d 1177 (8th Cir.1981); *Bradt v. Smith,* 634 F.2d 796 (5th Cir.1981), *cert. denied,* 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 106 (1981); *Taylor v. Nichols,*

558 F.2d 561 (10th Cir.1977). Accordingly, defendants' motion to dismiss plaintiffs' Ninth and Tenth Claims for Relief is GRANTED and both claims are hereby DISMISSED.

**6.** Judge Ellis' ruling was brief and set forth neither findings or fact nor the basis of his decision.

cise of jurisdiction so that a state court will have the opportunity to decide the matters at issue. *Colorado River Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). However, abstention is an *extraordinary* and *narrow* exception to the duty of a federal court to adjudicate controversies properly before it. *Id.* at 813, 96 S.Ct. at 1244. This duty may be abdicated in deference to the existence of concurrent litigation in a state court involving the same issues only in *exceptional* circumstances. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Abstention is justified only where there are important countervailing state interests.

There are three generally recognized categories of abstention: *Pullman* abstention, *Younger* abstention and *Burford* abstention. *See Colorado River Conservation District,* 424 U.S. at 814, 96 S.Ct. at 1244. Each category represents a unique set of circumstances which justify abstention by a federal court.

### A. *Pullman* Abstention

■■■■ The first and oldest form of abstention was judicially created in *Railroad Commission v. Pullman, supra.* The doctrine applies where there are federal constitutional issues which might be mooted by state court determination of relevant state law. *Id.* 312 U.S. at 501, 61 S.Ct. at 645; *Colorado River Conservation District,* 424 U.S. at 814, 96 S.Ct. at 1244. The state issues must exhibit the qualities of uncertainty and ambiguity. *See Wisconsin v. Constantineau,* 400 U.S. 433, 438–39, 91 S.Ct. 507, 510–11, 27 L.Ed.2d 515 (1971). *Pullman* abstention is *inappropriate* when the most important issues of law presented are federal, not state issues.

*See In re Levy,* 574 F.2d 128, 130 (2nd Cir.1978); *United States v. City of Pittsburgh,* 589 F.Supp. 179, 184 (W.D.Pa.1984).

■■■■ Applying these principles, the court finds *Pullman* abstention inappropriate in the case at bar for two reasons. First, the only state issue on appeal to the North Carolina Court of Appeals is apparently a basic jurisdictional issue. Since Judge Ellis' opinion includes no findings of fact and only his ultimate conclusion of law, the court must presume the state issues are not novel or complex.[7]

Second, the most important issues presented in this action are federal, not state, issues. Plaintiffs allege defendants' actions (essentially breach of contract) constitute a deprivation of property in violation of their Fifth and Fourteenth Amendment rights. These constitutional issues were not raised in plaintiffs' state complaint and, therefore, will likely not be addressed by the state courts.

### B. *Younger* Absention

The second of the abstention doctrines is *Younger* abstention. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Younger* abstention is predicated upon comity, that is, "a proper respect for state functions, a recognition of the fact that the entire country is made up of a union of separate state governments, and a continuance of the belief that the National Government will fare best if the states and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 44, 91 S.Ct. at 750.

■■■■ As originally formulated, this type of abstention was appropriate only where: (1) there was a pending state proceeding (2) which was criminal in nature and (3) no unusual circumstances counseling against

---

7. At oral argument on plaintiffs' motion for a preliminary injunction, both parties argued that the basis for the ambiguous state court dismissal involved the question of whether the state waived sovereign immunity in *this* type of contract action. Since North Carolina has abrogated the doctrine of sovereign immunity in contract actions, *see Smith v. State,* 289 N.C. 303,

222 S.E.2d 412 (1976), the court is persuaded plaintiffs' breach of contract claim is cognizable in the state courts. To the extent plaintiffs' state court action simply involves a further interpretation of *Smith v. State,* neither unsettled issues of state law nor ambiguous state statutes are involved.

abstention were present. *United States v. Anderson County*, 705 F.2d 184, 188 (6th Cir.1983). *Younger* abstention has now been modified to warrant abstention in civil cases, but only where the state proceedings implicate overriding state interests and provide an adequate opportunity to raise constitutional challenges. *Id; Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2522, 73 L.Ed.2d 116 (1982).

Although this presents a very close question, the court finds that *Younger* abstention does not bar consideration of this case. As important as the state's interest in administering its own leasing laws without federal interference may be, that interest is not of sufficient magnitude to persuade this court to invoke the extraordinary doctrine of abstention. The public and private interests in expeditiously resolving this controversy, which involves substantial state property and significant allegations of misconduct by a number of high-ranking state officials, outweigh the magnitude of the state's interest, particularly when the constitutional issues raised in this litigation were not raised in the state proceeding.[8]

### C. *Burford* Abstention

The third of the abstention doctrines is *Burford* abstention. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). It applies when there exists (1) a state-created regulatory scheme which would be disrupted by federal court review and (2) a specially-created forum with specialized competence in that particular area. *Id.* at 327, 63 S.Ct. at 1104. The primary consideration is whether the provision, statute or action to be reviewed in federal court requires such highly specialized expertise so that it would be better to defer to the state adjudicative bodies specifically created for handling such matters. *United States v. City of Pittsburgh*, 589 F.Supp. at 185; *See* also *Nasser v. City of Homewood*, 671 F.2d 432, 440 (11th Cir. 1982); *Turf Paradise, Inc. v. Arizona Downs*, 670 F.2d 813, 820 (9th Cir.), *cert. denied*, 456 U.S. 1011, 102 S.Ct. 2308, 73 L.Ed.2d 1308 (1982).

Neither of the factors favoring *Burford* abstention are present in this case. The leasing process and alleged contract presently before this court are not part of a complex regulatory scheme nor does a state forum with specialized expertise exist for handing such matters.

Therefore, the court finds no compelling interests at stake which would require the court to abstain from discharging its duty to adjudicate this controversy.

### (3). CLAIM PRECLUSION

In January 1984, plaintiffs brought suit in the North Carolina courts alleging breach of contract against these same defendants and predicated their cause of action on the same facts alleged herein. The court dismissed plaintiffs' claim on the ground of lack of jurisdiction. Appeal from that decision is pending in the North Carolina Court of Appeals.

While appealing the state judgment, plaintiffs filed this action in federal court alleging constitutional violations pursuant to 42 U.S.C. § 1983. Defendants now contend claim preclusion bars this action.[9]

---

**8.** Federal intervention is proper if the federal claim is one that cannot be raised in the state action. *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Although it is conceivable plaintiffs could amend their state complaint, should the Court of Appeals reverse the Superior Court, to include their constitutional claims, *see* N.C.R. Civ.P. 15(a), such amendment is extremely unlikely to occur.

**9.** Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that has not been litigated, but should have been advanced in an earlier suit. *See Migra v. Warren City School District Board of Education*, —— U.S. ——, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1983).

The Constitution's full faith and credit clause, implemented by 28 U.S.C. § 1738, "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state from which the judgments emerged." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). The rule of claim preclusion based on state court judgments has been extended to subsequent federal actions based on 42 U.S.C. § 1983.[10] *Migra v. Warren City School District Board of Education*, — U.S. —, 104 S.Ct. 892, 79 L.Ed.2d 56 (1983). Therefore, the law of North Carolina must be applied to determine whether this action is barred. *See Kutzik v. Young*, 730 F.2d 149, 151 (4th Cir.1984).

According to North Carolina law, a judgment on the merits is conclusive not only as to matters actually litigated and determined, but also as to all matters properly within the scope of the pleadings which could and should have been adjudicated at that time. *See Wilson v. Hoyle*, 263 N.C. 194, 139 S.E.2d 206 (1964); *Hayes v. Ricard*, 251 N.C. 485, 112 S.E.2d 123 (1960); *Worthington v. Wooten*, 242 N.C. 88, 86 S.E.2d 767 (1955); *Abernethy v. Armburst*, 217 N.C. 372, 8 S.E.2d 228 (1940); *Bruton v. Carolina Power & Light Co.*, 217 N.C. 1, 6 S.E.2d 822 (1940). Primary among the requirements for the application of claim preclusion in North Carolina is that there must have been a final judgment on the merits in the earlier litigation. *See State ex rel. Utilities Commis-*

sion *v. Department of Agriculture*, 250 N.C. 410, 109 S.E.2d 368 (1959); *Cox v. Cox*, 221 N.C. 19, 18 S.E.2d 713 (1942).

The problem with defendants' argument is that a procedural dismissal based on want of jurisdiction does *not* meet the "final judgment on the merits" requirement for the application of claim preclusion. *Hayes v. Ricard, supra; Brick v. Atlantic Coast Line Railroad Co.*, 145 N.C. 203, 58 S.E. 1073 (1907); N.C.R.Civ.P. 41(b) (dismissal for lack of jurisdiction does not constitute adjudication on the merits). When a suit is dismissed for want of jurisdiction, prior to a decision on the merits, once the jurisdictional defect is remedied plaintiff is at liberty to bring another action on the same cause before a court of competent jurisdiction. *See Costello v. United States*, 365 U.S. 265, 284–88, 81 S.Ct. 534, 544–45, 5 L.Ed.2d 551 (1961); *Stebbins v. Keystone Insurance Co.*, 481 F.2d 501, 508–09 (D.C.Cir.1973); *Keene Corp. v. United States*, 591 F.Supp. 1340, 1346 (D.D.C.1984); Restatement (Second) of Judgments § 20 (1982); Fed.R.Civ.P. 41(b). Therefore, defendants' motion to dismiss on the basis of claim preclusion must be DENIED.[11]

## (4). ELEVENTH AMENDMENT IMMUNITY

Defendants next contend that this action is barred in whole or in part by the immunity of the state under the eleventh amendment.[12] Plaintiffs argue that the eleventh amendment does not bar this action because (1) the state has abrogated its sover-

---

**10.** Plaintiffs were free to raise their § 1983 claims in their state court action had they chosen to do so. State courts may exercise concurrent subject matter jurisdiction over claims arising under § 1983. *Maine v. Thiboutot*, 448 U.S. 1, 3 n. 1, 100 S.Ct. 2502, 2503, 65 L.Ed.2d 555 (1980); *Snuggs v. Stanly Co. Dept. of Public Health*, 310 N.C. 739, 740, 314 S.E.2d 528 (1984).

**11.** Although counsel argues that Judge Ellis' opinion was based on the doctrine of sovereign immunity, that basis of decision is not at all clear from his order of February 8, 1984. The court is bound by the four corners of the state court judgment. Had it been proven to the court's satisfaction that sovereign immunity was

indeed the basis of the state court decision, this litigation might well have been barred by claim preclusion since a dismissal premised upon sovereign immunity constitutes a final judgment on the merits. *See Kutzik v. Young*, 730 F.2d at 151.

**12.** The eleventh amendment to the Constitution provides that:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

eign immunity in contract actions and thereby consented to § 1983 suits premised on breach of contract, (2) the amendment does not prohibit prospective injunctive relief against state officials and (3) monetary relief is requested only against certain of the named defendants acting solely in their individual capacities.

42 U.S.C. § 1983 creates a cause of action for legal and equitable relief against "every person" who, under color of state law, deprives a citizen of "any rights, privileges or immunities secured by the Constitution and laws" of the United States. The Supreme Court has consistently held that § 1983 does not abrogate the eleventh amendment immunity of the states. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This protection has also been held to extend to suits brought by a citizen against his own state. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

A state may waive its eleventh amendment immunity and consent to suit against it in federal court. *Pennhurst State School & Hospital v. Halderman*, — U.S. ——, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). Congress may also abrogate this immunity in some situations. *Id.* However, waiver exists only where stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. at 673, 94 S.Ct. at 1361 quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909). Absent waiver, the state is, therefore, immune from suit brought against it in federal court, regardless of the type of relief sought. *Pennhurst*, 104 S.Ct. at 908.

Plaintiffs argue that the eleventh amendment should not bar this action against the state (and the individual de-

fendants sued in their official capacities) because North Carolina has waived its eleventh amendment immunity on contracts entered into after March 2, 1976. Plaintiffs rely on *Smith v. State*, 289 N.C. 303, 222 S.E.2d 412 (1976), wherein the North Carolina Supreme Court held that when the State, through its agents, enters into a valid contract, the state implicitly consents to be sued for damages in the event of a breach. *Id.* Such a waiver of sovereign immunity, the court reasoned, is implicit in the state's decision to enter into contracts. *Id.* Otherwise, contracts made by the state would be unenforceable, a result never intended by the state. *Id.* However, a state's general or specific waiver of sovereign immunity under state law does not constitute a waiver by the state of its immunity under the eleventh amendment. *Pennhurst*, 104 S.Ct. at 907 n. 9 (1984); *Florida Department of Health & Rehabilitative Services v. Florida Nursing Home Association*, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981).

In *Smith*, the North Carolina Supreme Court abrogated the doctrine of sovereign immunity with regard to contract actions with the state in order to allow injured parties a forum in which to air their grievances. 289 N.C. at 303, 222 S.E.2d at 412; *Hutchens v. Hankins*, 63 N.C.App. 1, 25, 303 S.E.2d 584, 598 (1983). This rationale does not apply to eleventh amendment immunity as the state has provided a remedy in its own courts. *See id.* Therefore, defendant State of North Carolina's motion to dismiss the case against it, based on the eleventh amendment, is ALLOWED.[13]

With regard to the individually-named defendants, the applicable principles of law were recently and expertly summarized by Chief Judge Britt of this District in *Phillips v. Bright*, No. 83–43–CIV–2 (October 18, 1984):

> The eleventh amendment also bars a suit against individually-named state offi-

---

**13.** Defendant State of North Carolina's motion to dismiss is also Allowed because a state is not a proper defendant in a § 1983 action. *Ala-*

*bama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Curtis v. Everette*, 489 F.2d 516, 521 (3d Cir.1973).

cials when the state is the real party in interest. *Pennhurst*, 104 S.Ct. at 908; *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 [65 S.Ct. 347, 89 L.Ed. 389] (1945). However, there is an important exception to this general rule. State officials may be sued in federal court when there is a constitutional challenge to their actions, *Ex parte Young*, 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908), or when their actions are alleged to be in violation of other federal laws. *See Pennhurst*, 104 S.Ct. at 904. A suit challenging the propriety of a state official's action on federal law grounds is not seen as one against the state. *Pennhurst*, 104 S.Ct. at 908; *Young*, 209 U.S. at 123 [28 S.Ct. at 441]. The theory behind this fiction is that a state cannot authorize its officers to act in violation of federal law and, therefore, the officer is "stripped of his official ... character and subjected to the consequences of his official conduct." *Young*, 209 U.S. at 160 [28 S.Ct. at 454]. Such a fiction is necessary to prevent the state from using the eleventh amendment as a means of avoiding compliance with the federal constitution and laws.

State officials may be sued either in their official or individual capacity. A state officer is subject to liability in his "official capacity" only when he causes injury while executing a governmental policy or custom. *Hughes v. Blankenship*, 672 F.2d 403, 405–6 (4th Cir.1982). *See Monell v. Department of Social Services*, 436 U.S. 658, 694 [98 S.Ct. 2018, 2037, 56 L.Ed.2d 611] (1978). If a state officer is sued in his official capacity, the eleventh amendment bars retroactive monetary relief against him. *Edelman v. Jordan*, 415 U.S. 651, 664–66 [94 S.Ct. 1347, 1356–57, 39 L.Ed.2d 662] (1974). Monetary recovery against a state official who is acting in compliance with his state-imposed duties would necessarily come from the state treasury and would, therefore, be a recovery against the state. *Id.* A state officer acting in his official capacity may, however, be enjoined from the future use of his office in a manner inconsistent with the federal constitution or laws. *Id.* at 664 [94 S.Ct. at 1356]. In this sense prospective injunctive relief may be had against a state indirectly. *Pennhurst*, 104 S.Ct. at 909; *Edelman*, 415 U.S. at 664 [94 S.Ct. at 1356].

State officials may also be sued in their individual capacity for acts which were outside the scope of their delegated authority. *Ex parte Young*, 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908). The eleventh amendment does not apply to claims against state officials in their individual capacity. *Id.* Rather, a state official sued individually may raise a qualified immunity defense if his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 [102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). However, qualified immunity only protects the individual from civil damages, it does not protect him from suits for injunctive relief. *See id.*

In accordance with these principles, the court holds that plaintiffs may pursue their § 1983 action against the individual state officials sued in their official capacity only insofar as plaintiffs seek *prospective* injunctive relief. To the extent plaintiffs seek actual, special or punitive damages from defendants Graham, Patterson, Grady, Parham, Lewis and Rand, in their official capacity, defendants' motion to dismiss is GRANTED. Finally, the eleventh amendment does *not* protect the above-named defendants from being sued in their individual capacities and defendants' motion to dismiss on that basis is DENIED.

### (5). PLAINTIFFS' § 1983 CLAIM

To prevail in a civil rights action under § 1983, a plaintiff must establish two elements: (1) that the defendant deprived him of a right secured by the Constitution or laws of the United States and (2) that such deprivation was committed by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920,

1923, 64 L.Ed.2d 572 (1980). There is no issue in this litigation regarding the second element—any deprivation that occurred was committed by the defendants acting under color of state law. Thus, the focus of the court's inquiry is whether plaintiffs have been deprived of any right secured by the Constitution and laws of the United States. *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979).

Plaintiffs' underlying assertion is that defendants injured them by breaching the December, 1982 oral agreement to renew their lease. According to the plaintiffs, this breach of contract deprived them of property without due process of law and equal protection and, further, constituted a taking of property without just compensation, all in derogation of their rights under the Fifth and Fourteenth Amendments.[14] This unusual characterization of a basic breach of contract claim was designed to bring the plaintiffs' case within the ambit of § 1983.

■■■ The problem with plaintiffs' argument is that § 1983 imposes liability solely for violations of rights protected by the Constitution and federal law, not for violations arising simply out of state tort and contract law principles. While § 1983 claims may frequently constitute "a species of tort liability," *Imbler v. Pachtman,* 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976), the court has warned that § 1983 is not "a font of tort law to be superimposed upon whatever systems may already be administered by the states." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976); *Estelle v. Gamble,* 429 U.S. 97, 104–06, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976). Section 1983 does not automatically convert potential contract and tort liability under state

law into contract and tort liability under federal law whenever the defendant is the state. Just as "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner," *Estelle v. Gamble,* 429 U.S. at 106, 97 S.Ct. at 292, breach of contract does not become a violation of the Fourteenth Amendment merely because the defendants are state officials. *See, e.g., Baker v. McCollan,* ("false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official"); *Martinez v. California,* 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980) ("not every injury in which a state official has played some part is actionable under [§ 1983]"); *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980) (not every violation of state tort and criminal assault laws is a violation of substantive due process).

■■ Thus, while some conduct may clearly violate state law, it may not rise to the dimensions of constitutional injury. The proper remedy in those instances is a suit in state court under traditional contract and tort principles. *Daniels v. Twin Oaks Nursing Home,* 692 F.2d 1321 (11th Cir.1982). The issue facing this court is whether plaintiffs' allegations of breach of contract result from the sort of abuse of government power that is necessary to raise an ordinary state law claim to the statute of a violation of the Constitution. *Turpin v. Mailet,* 579 F.2d 152, 156 (2d Cir.1978) (concurring opinion), *cert. denied* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662 (1978), quoting Note, *Damage Remedies Against Municipalities for Constitutional Violations,* 89 Harv.L.Rev. 922 (1976). *See also Hull v. City of Duncanville,* 678 F.2d 582 (5th Cir.1982); *Williams v. Kelley,* 624 F.2d 695 (5th Cir.1980); *Daniels v. Twin Oaks Nursing Home, supra.* This

---

**14.** Plaintiffs' conclusory allegation of a violation of the Equal Protection Clause is without merit and is DISMISSED from this litigation. Plaintiffs allege no factual basis for this cause of action and the court fails to discern any classification created by state law or action in this case.

In addition, although it is somewhat unclear from the pleadings, plaintiffs apparently assert their § 1983 claim is also predicated upon a violation of some protected "liberty" interest under the Fourteenth Amendment. The court finds no liberty interest at stake in this litigation. This assertion likewise ·is without merit and is DISMISSED.

court finds plaintiffs' claims fail to take on any heightened constitutional or federal significance.[15]

The plaintiffs' cause of action is a simple one for breach of contract. No federal constitutional issues are posed by this rather basic dispute over whether an enforceable agreement was entered into in December, 1982 and then subsequently breached by defendants. *See Heath v. City of Fairfax*, 542 F.2d 1236, 1238 (4th Cir.1976). This essentially is a suit under state law involving merely the interpretation and application of state contract and, perhaps, tort law principles. Plaintiffs do not allege defendants' actions were based on race, religion, sex or national origin. Nor do plaintiffs contend the lease was not renewed because plaintiffs exercised any freedom granted or liberty protected by the Constitution. The only federal question in this case is whether breaches of state leasing agreements amount to constitutional torts litigable in federal court under 42 U.S.C. § 1983.

In this Circuit, allegations of due process violations do not create a federal cause of action where the real basis for the suit is a mere breach of contract. *Coastland Corp. v. County of Currituck*, 734 F.2d 175, 178 (4th Cir.1984); *Howard v. Walker*, 734 F.2d 11 (4th Cir.1984) (Unpublished); *Heath v. City of Fairfax, supra*. Were the rule otherwise, virtually every controversy involving an alleged breach of contract by a government agency or official, regardless of diversity of citizenship, would become a constitutional case initiated in federal court under the guise of substantive or procedural due process by artful draftsmanship. *Medina Jimenez v. Almodovar*, 650 F.2d 363, 370 (1st Cir.1981). *See also Chiplin Enterprises v. City of Lebanon*, 712 F.2d

1524, 1527 (1st Cir.1983); *Arena Del Rio, Inc. v. Gonzalez*, 704 F.2d 27, 28 (1st Cir. 1983); *Bleeker v. Dukakis*, 665 F.2d 401, 403 (1st Cir.1981). No different result is required under the Takings Clause. *See Casey v. DePetrillo*, 697 F.2d 22, 23 (1st Cir.1983); *Jackson Sawmill Co. v. United States*, 580 F.2d 302, 306–07, 311 and n. 12 (8th Cir.1978), *cert. denied*, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979); *cf. Hays v. Port of Seattle*, 251 U.S. 233, 237–38, 40 S.Ct. 125, 126, 64 L.Ed. 243 (1920) (Contract Clause); *E & E Hauling, Inc. v. Forest Preserve District*, 613 F.2d 675, 678–79 (7th Cir.1980) (same). Therefore, absent the allegation of a constitutional deprivation, plaintiffs have failed to state a claim for relief under 42 U.S.C. § 1983 and defendants' motion to dismiss on this basis is GRANTED.

But even if plaintiffs had a property right under the Constitution and the state deprived them of it, plaintiffs' claim would still fail because there has been no denial of due process. This determination focuses on the Supreme Court's decision in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Defendants argue that *Parratt* precludes this suit because North Carolina provides an adequate post-deprivation remedy. The court agrees.[16]

The plaintiff in *Parratt*, a state inmate, alleged that he was deprived of property without due process of law when prison officials negligently lost in the prison mail system a hobby kit plaintiff had ordered. The Supreme Court, in an opinion written by Justice Rehnquist, agreed that plaintiff may have been deprived of his property within the meaning of the Fourteenth Amendment. *Id.* at 536–37, 101 S.Ct. at 1913–14. However, the court held that ran-

---

**15.** Although plaintiffs contend the actions of defendant state officials may amount to a separate count of common law fraud, it appears to the court that this is an obvious attempt to enhance what plaintiffs otherwise concede is a basic breach of contract claim.

**16.** If a cognizable constitutional interest were present and if it were clear that plaintiffs were barred from pursuing their state court remedies

on the basis of sovereign immunity, a different result might well be reached. *See Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 3205, 82 L.Ed.2d 393 (1984); *Ausley v. Mitchell*, 748 F.2d 224 (4th Cir.1984) (Winter, J.; concurring in part); *Daniels v. Williams*, 748 F.2d 229 (4th Cir.1984) (Phillips, J.; dissenting in part). However, such is not the case in this action.

dom negligent loss of the inmate's property did not constitute a due process violation where the state provided an adequate post-deprivation remedy. *Id.* at 540–41, 101 S.Ct. at 1915–16. Thus, even if plaintiff suffered a constitutional deprivation by an official acting under color of state law, the Nebraska post-deprivation tort remedy provided all the due process to which plaintiff was entitled. Therefore, plaintiff's claim under § 1983 was not actionable.

Defendants assert the rationale of *Parratt* applies with equal force to the facts of this case and mandates the dismissal of the action because plaintiffs have state tort and contract remedies. North Carolina law clearly provides plaintiffs with a cause of action for breach of contract. *Smith v. State, supra.* Plaintiffs having initiated suit in state court on their claim, defendants assert an adequate post-deprivation remedy is readily available and is being actively pursued.

Lower federal courts attempting to analyze *Parratt* and apply its reasoning to a myriad of § 1983 fact situations have based their analyses on one or more of four sets of distinctions: (1) negligent vs. intentional deprivations; (2) liberty vs. property interests; (3) procedural vs. substantive constitutional guarantees; and (4) random and unauthorized official acts vs. established procedure, policies and custom. *See Holmes v. Ward,* 566 F.Supp. 863, 864–65 (E.D.N.Y.1983). Applying these principles, the court finds in favor of the defendants on all four counts.

*Parratt* dealt with a negligent loss of property. A number of lower courts attempted to distinguish *Parratt* and limit its scope to only those actions involving negligent deprivations. *See, e.g., Madyun v. Thompson,* 657 F.2d 868, 873 (7th Cir. 1981); *Parker v. Rockefeller,* 521 F.Supp. 1013, 1016 (N.D.W.Va.1981). However, this past summer the Supreme Court laid this distinction to rest in *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) wherein the court extended application of *Parratt* to cases involving *intentional* deprivations of proper-

ty. *Id.* 104 S.Ct. at 3202–3205. The case at bar involves an alleged intentional deprivation of property and is controlled by *Hudson.*

The liberty/property distinction applied by some lower courts, *see, e.g., Schiller v. Strangis,* 540 F.Supp. 605, 615 (D.Mass. 1982), is inapplicable. This case, like *Parratt,* involves a property and not a liberty interest.

The third and legally sound distinction is that premised upon the difference between procedural and substantive constitutional guarantees. *See Wolf-Lillie v. Sonquist,* 699 F.2d 864, 872 (7th Cir.1983); *Brewer v. Blackwell,* 692 F.2d 387, 395 (5th Cir.1982); *Irshad v. Spann,* 543 F.Supp. 922, 926 (E.D.Va.1982). However, plaintiffs' claim in the case at bar, like the plaintiff's claim in *Parratt,* does not implicate any of the substantive constitutional guarantees made applicable to the states by the Fourteenth Amendment. Thus, as in *Parratt,* where state law provides a complete and adequate remedy for any unlawful deprivation, the requirements of due process are satisfied and the constitutional basis for the § 1983 allegation is eliminated.

Finally, some courts have properly focused on the difference between random and unauthorized official acts and established state procedure, practice or custom. *See, e.g., Holmes v. Ward,* 566 F.Supp. 863, 866 (E.D.N.Y.1983); *Begg v. Moffitt,* 555 F.Supp. 1344, 1360–61 (N.D.Ill.1983). This distinction was critical to the *Parratt* decision, wherein the court stated:

> The justifications which we have found sufficient to uphold takings of property without any predeprivation process are applicable to a situation such as the present one involving a tortious loss of a prisoner's property as a result of a random and unauthorized act by a state employee. In such a case, the loss is not a result of some established state procedure and the state cannot predict precisely when the loss will occur. 451 U.S. at 541, 101 S.Ct. at 1916.

Plaintiffs' case, however, does not benefit from this analysis because their alleged

deprivation is not predicated upon an established state procedure. Plaintiffs' allegations clearly establish that if a breach occurred, it was committed as a result of state officials acting randomly and without authority. Based on the aforesaid, the court concludes plaintiffs have failed to state a cognizable claim under § 1983 premised upon any deprivation of their constitutional rights secured by the Fourteenth Amendment.

Therefore, defendants' motion to dismiss is GRANTED for the various reasons set forth herein and this action is ordered DISMISSED.

██ SO ORDERED.[17]

See also, D.C., 538 F.Supp. 868.

---

**17.** Defendants' motion for attorneys' fees is DENIED. The court has considered defendants' motion at length before making the decision to deny fees. Frankly, the court finds increasing attempts to enhance basic state law claims to constitutional significance, thus, placing them within the ambit of § 1983, a highly disturbing trend. This case exemplifies the time and resources which must be allocated to such complaints, which do not, by their very nature, belong in federal court. However, although the court strongly disagrees with plaintiffs' position, the court finds their arguments were not frivolous nor were they presented in bad faith as those terms are defined in the law.